731 So.2d 736 (1999)
MICHELIN NORTH AMERICA, INC., f/k/a Michelin Tire Corporation, and Davis Bandag Recapping & Tire Co., Appellants,
v.
Julian Bernard LOVETT, Dorothy Mae Lovett, and Julian Lovett, Jr., By and Through his next friend and guardian, Dorothy Mae Lovett, Appellees.
No. 97-4499.
District Court of Appeal of Florida, Fourth District.
March 31, 1999.
Rehearing Denied June 1, 1999.
Daniel S. Pearson, Linda Collins Hertz, Christopher N. Bellows, Lenore C. Smith, *737 and Lucinda A. Hofmann of Holland & Knight, LLP, Miami, for appellants.
Joseph J. Reiter and Donald R. Fountain, Jr., of Lytal, Reiter, Clark, Fountain & Williams, and Jane Kreusler-Walsh of Jane Kreusler-Walsh, P.A., West Palm Beach, for appellees.
POLEN, J.
Michelin North America, Inc., f/k/a Michelin Tire Corp., and Davis Bandag Recapping & Tire Co., (collectively "Michelin") appeal a final judgment awarding appellees Julian Lovett, Dorothy Lovett, and Julian Lovett, Jr., damages of $30,424,000. Michelin presents four points on appeal. The first three concern alleged errors in voir dire and the fourth concerns the amount of damages awarded. Our review of the record on appeal and application of pertinent case law leads us reluctantly and unavoidably to the conclusion that error occurred in the denial of Michelin's peremptory challenge of Ms. Shirley Meeks, an African-American woman who served on the Lovetts' jury. Thus, we are constrained to reverse the judgment on appeal and remand for a new trial. Our resolution of this point on appeal renders Michelin's other three points moot.
The Lovetts sued Michelin alleging Julian Lovett suffered a catastrophic accident resulting in the amputation of his legs as a result of a hidden defect which caused the Michelin tire on Mr. Lovett's tractor-trailer rig to blowout on April 24, 1989. The circumstances of Mr. Lovett's injuries and the suffering he and his family have endured were made clear during the course of their four week trial. For purposes of this appeal, we limit our recitation of the facts to those material to the voir dire error.

VOIR DIRE
The parties began questioning the second venire panel on the second day of voir dire after the first venire panel was excused by the trial court. Among the twenty-four potential jurors in this second venire panel was Ms. Meeks, a resident of Riviera Beach for approximately forty-six years who was employed by the Palm Beach County Board of County Commissioners in the Public Affairs Office as a secretary responsible for disseminating information. Ms. Meeks was married with three children, one of whom worked at a Firestone Tire and Service Center.
The Lovetts' counsel, Mr. Reiter, turned his questioning to the subject of the potential jurors' experiences with tire blowouts. Twenty-one of the twenty-four potential jurors admitted to some experience with either sudden flat tires or blowouts. Ms. Meeks was among those twenty-one. Ms. Meeks stated she experienced a blowout when she ran over something in the street and described how her B.F. Goodrich tire began to feel flat causing her to bring her vehicle to a stop on the side of the street. Her son replaced the tire with a Michelin tire.
Ms. Meeks went on to explain her daughter's very recent tire blowout experience:
MS. MEEKS: But I've hadmy daughter has had an experience two weeks ago that really took effect on me. It wasn't a front [tire].
She was traveling the Florida Turnpike. She was doing seventy-five miles an hour. Her back tire blew out. She's a very young, you know 
MR. REITER: Young driver?
MS. MEEKS:girl, I would say, young lady.
But she stopped. The car stopped. She said she gives it to God, because she said she don't know how the car stopped. She stopped. She didn't dart in or out. The car stopped on the side of the road.
And they did find out that it was a something wrong with the tire, nothing she ran over, because when they took the tire off the car, the tire had blown *738 from the inside. Something had ripped from the inside.
And it wasn't any visible means or holes in the tire. They tested it and tested it. So we got her four new tires.
MR. REITER: And who manufactured those tires, if you recall?
MS. MEEKS: The tires that she had on her car were Michelin. It came from when she bought the car, they were on the car.
We changed them back to Michelin.
MR. REITER: So they replaced all four tires?
MS. MEEKS: All four tires.
MR. REITER: Even though the other three had not blown out?
MS. MEEKS: Right.
MR. REITER: Thank you very much, ma`am.
While being questioned by Michelin's counsel, Mr. Rothman, Ms. Meeks responded to a question regarding family members or close friends involved in civil litigation by stating one of her children was in litigation with the State Attorney's office. Ms. Meeks said her child had been sued; however, it looked as if the case would be "thrown out." Mr. Rothman asked Ms. Meeks whether the suit was a personal injury suit or a commercial case or business case, and she responded the case was "personal."
Ms. Meeks was educated about tire maintenance by her son, who taught her to look for tire wear and continues to insist that maintenance on her vehicle be completed timely. When questioned regarding tire preference, Ms. Meeks volunteered she preferred both Michelin and Yokohama tires. Mr. Rothman did not inquire further of Ms. Meeks regarding her daughter's Michelin tire blowout.
During jury selection, Michelin first challenged Ms. Meeks for cause, noting what it alleged were evasive answers to questions regarding family members involved in litigation. The trial court denied Michelin's challenge for cause. As jury selection neared a close, Michelin peremptorily challenged Ms. Meeks and the Lovetts objected on the basis Michelin's challenge was racially motivated. Michelin provided four reasons for its challenge:
MR. ROTHMAN: Judge, we have several non-racial reasons.
First of all, Ms. Shirley Meeks made it very clear early on in Mr. Reiter's examination that her daughter had experienced a blowout at seventy-five miles an hour on a rear tire.
The quote that I have is that she said that it really affected her, the fact that her daughter had been involved in this incident.
She also said that the four tires were replaced with other Michelins, but that was not due to selection. That was due to taking it back to the dealer and complaining and demanding the replacement of not only the one tire involved in the incident, but all tires equipped on the vehicle, and we find that bothersome.
Number two is with respect to the son, I still contend that in my view, when I was asking the questions
THE COURT: She wasn't candid with you?
MR. ROTHMAN: There was a lack of candor with this lady. I don't think she truly expressedand I'm concerned if she was not totally candid in responding to that particular area of inquiry, that perhaps there were other areas of inquiry in which she was not also totally candid.
MR. REITER: Your Honor 
MR. ROTHMAN: Also, if I could just finish, there are alreadythere are two other African-American prospective jurors.
THE COURT: Doesn't matter.
MR. REITER: Doesn't matter. I can have six [African-American jurors] and you can't strike one of them.
MR. ROTHMAN: Thirdly, Judge, she is a worker for the county, and I have *739 some subjective concerns not having anything to do with race, but being a government worker in that capacity. And that's it, Your Honor.
The trial court did not expressly find any reason Michelin gave for its peremptory challenge was race-neutral, yet it allowed Mr. Reiter to respond. Mr. Reiter argued the last of Michelin's three reasons, that Ms. Meeks was a county employee, was an insufficient reason unless Michelin could show some relationship between her employment and this case. The court agreed. Mr. Reiter next argued Michelin's "bad vibes and bad feelings" concerning Ms. Meeks' explanation of her son's involvement in litigation was not a sufficiently clear and reasonably specific explanation for exercising a peremptory challenge. The trial court apparently agreed with Mr. Reiter again because the trial judge stated: "Yeah, but what about the blowout with the kid?"
Mr. Reiter asserted there were other jurors who had blowouts involving Michelin tires who were not challenged, including Mr. Hoag. As we discuss in greater detail below, and as clarified by the chart contained in the Appendix to this opinion, Mr. Reiter's statement was inaccurate. The record shows Mr. Hoag did not know the make of his two tires that suffered blowouts; however, Mr. Hoag had returned a spare tire that was a Michelin, when he observed the tire was cut on the sidewall. Further, Mr. Hoag had been stricken peremptorily by the Lovetts before Michelin challenged Ms. Meeks. Mr. Reiter also asserted "two or three other jurors talked about Michelin blowouts that actually happened to them." Again, the record shows Mr. Reiter's recollection of voir dire responses was inaccurate.
Before returning to a recitation of the material facts, we pause briefly to note a concern. The exercise of compiling the chart contained in the Appendix made it obvious to us that the trial court and counsel faced a significant challenge to quickly recall during the jury selection process the details of each of the twenty-four jurors' various experiences with tire blowouts. Voir dire is a significant part of any trial, whether that trial is expected to last two days or four weeks. During a Neil inquiry, the court must make the important determination of whether the challenged juror is being treated differently than similarly situated jurors. In light of the import of this inquiry, rather than relying on recollections of voir dire responses, we believe the better practice would be to have the jurors' voir dire responses read back by the court reporter. See Overstreet v. State, 712 So.2d 1174 (Fla. 3d DCA 1998).
As the inquiry below continued, the trial court apparently was not yet convinced Michelin's reason was pretextual, because it stated: "Well, she [Ms. Meeks] says I was very affected by it." Mr. Reiter responded:
MR. REITER: No, no. She said her daughter was affected to the effect that she's glad she didn't suffer a serious injury, that God intervened or what happened, but there was no fault placed whatsoever on the tire. She didn't condemn Michelin.
All the questions asked of Michelin was I'd treat them fairly, I would treat them no differently than anyone else, my son works for a tire dealer, I know that you're supposed to balance the tires, rotate them, and do all that other stuff.
On the contrary, it is more leaning towards their case than our case. And they have not demonstrated according to the Neal [sic] and Slappy decisions of the Supreme Court and all the cases that I've just cited that they're entitled to strike her.
And we think that, Your Honor, it is racially motivated, and we would object strongly.
The court denied Michelin's challenge and Ms. Meeks sat on the jury.

*740 OUR STANDARD OF REVIEW
In Melbourne v. State, 679 So.2d 759 (Fla. 1996) the court set out the guidelines which trial courts should follow when a party objects on racial grounds to an opponent's use of a peremptory challenge. After setting out the guidelines the court stated:
Voir dire proceedings are extraordinarily rich in diversity and no rigid set of rules will work in every case. Accordingly, reviewing courts should keep in mind two principles when enforcing the... guidelines. First, peremptories are presumed to be exercised in a nondiscriminatory manner. Second, the trial court's decision turns primarily on an assessment of credibility and will be affirmed on appeal unless clearly erroneous.
Id. at 764-65 (footnotes omitted).
The denial of a party's right to exercise peremptory challenges, so long as those challenges are not exercised in a racially improper manner, constitutes error. Cure v. State, 564 So.2d 1251, 1253 (Fla. 4th DCA 1990).

ALLEGED ERROR IN THE CONDUCT OF THE NEIL INQUIRY
Michelin first argues the trial court erred, as a matter of law, in the conduct of its Neil inquiry by failing to reach the issue of the genuineness of its race-neutral reasons for challenging Ms. Meeks. We disagree, and find the trial court implicitly ruled Michelin's challenge was not genuine.
In Harrison v. Emanuel, 694 So.2d 759 (Fla. 4th DCA), rev. denied, 700 So.2d 685 (Fla. 1997), this court recently reiterated the steps to be followed by a trial court when the issue of race-motivated peremptory challenges arises:
In State v. Neil, 457 So.2d 481 (Fla. 1984), the supreme court established a procedure for the trial court when the issue of race-motivated peremptory challenges arises. The procedure has evolved since then, and was recently clarified:
A party objecting to the other side's use of a peremptory challenge on racial grounds must: a) make a timely objection on that basis, b) show that the venire person is a member of a distinct racial group, and c) request that the court ask the striking party its reason for the strike. If these initial requirements are met (step 1), the court must ask the proponent of the strike to explain the reason for the strike.
At this point, the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step 2). If the explanation is facially race-neutral and the court believes that, given all the circumstances surrounding the strike, the explanation is not a pretext, the strike will be sustained (step 3). The court's focus in step 3 is not on the reasonableness of the explanation but rather its genuineness. Throughout this process, the burden of persuasion never leaves the opponent of the strike to prove purposeful racial discrimination.
Id. at 760 (quoting Melbourne v. State, 679 So.2d 759, 764 (Fla. 1996)).
Michelin relies on Greene v. State, 718 So.2d 334 (Fla. 3d DCA 1998) where the appellate court found the trial judge improperly ended the Neil procedure at step two when it determined the reasons provided were not ethnic-neutral, even though the reasons were clearly ethnic-neutral. Id. at 335. The court reiterated the distinction between step two and step three as recited in Melbourne, noting that if reasons given for a peremptory challenge are facially ethnic-neutral, the trial court must then proceed to the third step and assess the genuineness of the reasons in order to determine whether they are pretextual. Greene, 718 So.2d at 335.
Michelin's reliance on Greene is misplaced because although the trial court *741 below did not use the magic words of Melbourne while conducting the Neil inquiry, the court pressed Mr. Reiter to respond to Michelin's reason regarding Ms. Meeks' experience with a Michelin blowout, thus indicating the court found this reason to be facially race-neutral. After Mr. Reiter responded that Michelin accepted other jurors with similar experience with a Michelin blowout, a fact not borne out by the record, the court then denied Michelin's challenge. Although the trial court did not use the language of Melbourne, its denial amounted to a finding Michelin's reason was not genuine. See King v. Byrd, 716 So.2d 831 (Fla. 4th DCA 1998) (interpreting a virtually identical procedure to that followed by the trial court below as a determination the proffered reason was not genuine and was a pretext, thus fulfilling step three of the Melbourne analysis). Therefore we find no error in the trial court's conduct of the Neil inquiry.

ERROR IN THE DENIAL OF MICHELIN'S PEREMPTORY CHALLENGE
While Michelin's challenge to the procedure utilized below does not demonstrate clear error, its challenge to the trial court's ultimate ruling is well-founded. Michelin's first stated ground for its peremptory challenge was that Ms. Meeks had recently been affected by her daughter's Michelin tire blowout experience. As Ms. Meeks explained, testing of the tire revealed the blowout was caused by a defect in the tire: "something wrong with the tire, nothing she ran over, because when they took the tire off the car, the tire had blown from the inside. Something had ripped from the inside." This type of defect was substantially similar to the type of defect the Lovetts would be arguing to the jury.
Ms. Meeks relayed more details of the investigative process, stating: "And it wasn't any visible means or holes in the tire. They tested it and tested it." She explained that all four tires were replaced, even though the other three had not blown out. Overall, Ms. Meeks demonstrated she was well-informed regarding the circumstances of her daughter's blowout to the extent that she recited somewhat detailed information regarding the cause of the blowout and some participation in the remedy, i.e., "So we got her four new tires." Her unique experience with a defective Michelin tire causing a blowout that potentially, but for divine intervention, could have resulted in the type of accident Mr. Lovett endured, made Ms. Meeks a potential juror Michelin did not want to sit in judgment of the Lovetts' claim.
Plaintiffs' counsel's contention during the jury selection process that the reason for Michelin's challenge was equally applicable to other jurors, an argument repeated on appeal, is not supported by the record. Neither Mr. Hoag, nor any other potential juror reached during the jury selection process, could have been challenged on the same basis Michelin challenged Ms. Meeks.
Mr. Hoag was changing a Michelin tire on his brand new car because of a slow leak in the tire when he saw that the unused spare tire, also a Michelin, had a cut in the side wall. He returned the spare tire to the dealer and it was replaced. Mr. Hoag's notice of a cut on the side wall of a tire he was about to use for the first time differs significantly from Ms. Meeks' daughter's tire explosion which occurred while driving seventy-five miles per hour on an expressway, and after which it was learned there was a defect within the tire that caused the blowout. In addition, Mr. Hoag was peremptorily challenged by the Lovetts and did not serve on the jury. Michelin was not required to express its challenge to Mr. Hoag after he was stricken. The only other juror who had any experience with a Michelin blowout was Mr. Hahn, and Mr. Hahn was not reached during voir dire.
Application of the two Melbourne principles compels our finding that clear error *742 occurred in the denial of Michelin's peremptory challenge of Ms. Meeks. Michelin's first stated reason for its peremptory challenge of Ms. Meeks was race-neutral and compelling. Its peremptory challenge was presumed to have been exercised in a non-discriminatory manner. The trial court's assessment of credibility resulting in its implied finding of a lack of genuineness was conducted in an atmosphere tainted by plaintiffs' counsel's inaccurate recollection of jurors' responses to voir dire questioning. A trial court's ruling on the issue of genuineness conducted in such an atmosphere is assailable as having resulted from a clearly erroneous assessment of credibility. On this record, we find the burden of demonstrating clear error has been met. See Melbourne, 679 So.2d at 764-65.
The instant case presents facts distinguishable from those present in King, supra. In King, the defendant doctor in a medical malpractice action brought by a mother whose child was brain damaged during birth sought to exercise a peremptory challenge against an African-American woman on the basis the potential juror was the single mother of two young children. Id. at 833. When asked to provide a race-neutral reason for his challenge, counsel first stated he was entitled to peremptorily challenge a potential juror if he did not like "the way they cut their hair." Id. He proceeded to explain the single mother of two would identify with the plaintiff and was the last person he wanted on the jury. Id. Plaintiff's counsel noted the venire member being challenged was one of the few who expressly stated she could walk out of the courtroom after finding for the defendant and against the plaintiff, and the court stated it would require a better reason from defense counsel. Id.
In affirming the court's denial of the defense's attempted peremptory challenge of the venire member, this court emphasized that the trial court's decision turns primarily on an assessment of credibility, and recognized defense counsel's opening remark regarding the cut of someone's hair "may have evinced to the court a lack of credibility of any of the following explanations." Id. at 834.
In the instant case Michelin's first stated reason for its peremptory challenge of Ms. Meeks concerned the similarity between Ms. Meeks' experience with a Michelin blowout and that of Mr. Lovett, a compelling reason that would not have evinced a lack of credibility. Further, statements made by the challenged juror in King indicated she would not sympathize with the Plaintiff, while the same is not true here. We disagree with the suggestion that Ms. Meeks was rehabilitated during Michelin's questioning. Her statement regarding a preference for both Michelin and Yokohama tires could be interpreted as indicating apprehension regarding Michelin tires after her daughter's recent experience, just as readily as the interpretation plaintiffs' counsel advocated below of an unwavering commitment to Michelin tires. Thus, the extent of Michelin's rehabilitation of Ms. Meeks is not as clear as the plaintiffs argued below.
We also reject the argument that Michelin was required to inquire further of Ms. Meeks on the issue of her daughter's Michelin blowout and to ask whether Ms. Meeks was truly affected by that experience as she claimed. Such an attempt would necessarily cause Michelin to place before the potential jurors the details of a defective Michelin blowout scenario substantially similar to Mr. Lovett's experience.
Finally, we reject the contention that when Michelin's peremptory challenge of Ms. Meeks is viewed in context, circumstances are apparent which demonstrate an impermissible pretext. We have already assessed the lack of similarity between Ms. Meeks' experience and that of any other potential juror. As to the Lovetts' argument that Michelin exercised a prior strike against a member of the same racial group, Ms. Knight, Michelin challenged *743 Ms. Knight for cause only after three other similarly situated jurors were successfully challenged for cause because of difficulties they expressed regarding serving on the jury during what was anticipated to be a four to five week trial. Ms. Knight's responses to voir dire questioning supported Michelin's challenge of Ms. Knight who worked two jobs, one of which was as a crossing guard early in the morning and again in the afternoon, after which she picked-up her children from school and brought them home. She stated she did not live alone in her home, but there was no indication she would receive assistance with her children from any other person. The trial court apparently agreed with Michelin that Ms. Knight would have difficulty serving because it granted Michelin's challenge for cause.
In summary, under the circumstances present here we find the trial court's denial of Michelin's peremptory challenge of Ms. Meeks constitutes clear error such that the final judgment must be reversed and the cause remanded for a new trial.
REVERSED and REMANDED.
STEVENSON and HAZOURI, JJ., concur.

APPENDIX
The following chart summarizes the venire members' experiences with tire blowouts and their treatment during the jury selection process. We reiterate this chart was not before the trial court at the time of voir dire and was not available to counsel. It was prepared by a staff attorney of this court to assist the panel in its analysis of this issue.

Juror's Experience Jurors Challenged Stricken/Chosen/
With Flats for Cause, Not Reached
or Blowouts Peremptorily, By
 Which Side, Reason
 Given
Mr. Hoagtwo or Challenged peremptorily Stricken Peremptorily
three blowouts, by by Plaintiffs
never lost control, Plaintiffs
40 mph or less,
does not recall the
make of tires, has
Michelin now, once
returned a Michelin
tire when he
noticed a cut or
gap in side wall of
spare tire
Ms. Meeksflat Challenged for Juror Number 1
tire, affected by cause by Michelin, African-American
Daughter's recent responses about
blowout on Michelin son's litigation either
tire, tire tested, based on misunderstanding
cause of blowout or
unknown, replaced untruthful, challenge
all four tires with denied;
Michelin, prefers Michelin attempted
Michelin and Yokohama to peremptorily
 challenge Meeks,
 but court denied
 Michelin's attempt
Mr. Aikencouple Juror Number 2
flats, no serious African-American
blowouts, uses
Firestone tires
based on price
Mr. Smithblowout Challenged for Stricken for Cause
at 60 mph on cause by Plaintiff, by Court
Goodrich tire, now he said his business
has Michelin would be devastated,
 he would
 be distracted,
 stricken
Ms. Johnson Juror Number 3
blowout on Okeechobee,
ran over
something, big
hole in tire, took
foot off gas and
moved vehicle
over, did not know
make of tire
Mr. Lakeythree Challenged peremptorily Stricken Peremptorily
blowouts, ran over by by Plaintiffs
metal twice and Plaintiffs
metal puncture
once
Ms. Sienaobserved Juror Number 4
truck blowout,
remnant of
tire blew up into
her windshield,
truck started
swerving, everyone
got out of truck's
way
Ms. Jonestwo Juror Number 5
blowouts, one at 65 African-American
mph, controlled
car to stop, old
tires and hit something.
second blowout
five months
ago when hit something
on I-95,
came to stop, did
not know make of
either tire
Ms. Mettler never Challenged for Stricken for Cause
had a blowout, just cause by Michelin by Court
flat tires, slow on basis her attorney
flats, has seen husband's expartner
"retread coming represented
off, pieces flying." by counsel for
believed her current Michelin in ongoing
tires were litigation and
Goodyear other connections
 to counsel, stricken
Ms. Lori-Steiber Stricken for Cause
passenger in by Court

*744
vehicle with blowout,
55 mph,
caused by wear
Challenged for
cause by Michelin
on basis she said
her business would
be devastated,
Plaintiffs objected,
stricken
Ms. Knightno Challenged for Stricken for Cause
experience with cause by Michelin by Court African-American
blowouts, never on basis single
observed blowout, mother with three
did not know make young children and
of tires two jobs, Plaintiffs
 objected, stricken
Ms. Golleblowout Challenged for Peremptorily by
thirty years Cause by Michelin Michelin
ago 65-70 mph, on basis she would
able to bring vehicle have hardship
to stop serving, denied by
 court. Challenged
 peremptorily by
 Michelin Stricken
Ms. Niemann Juror Number 6
passenger in vehicle
with blowout
years ago when
her family could
afford only recapped
tires, did
not know make of
tire
Ms. Roypassenger First Alternate
in vehicle with
blowout 13 months
ago, 60 mph,
picked up metal,
car came to stop,
could not remember
make of tire
Mr. Coppernoll Challenged peremptorily Stricken Peremptorily
blowout by by Plaintiffs
many years ago, 65 Plaintiffs
mph, resulted from
small bubble, did
not know make of
tire
Ms. Lennettno Second Alternate
experience with Excused during
blowouts, uses trial on revealing
Firestone tires her first husband
 was a double amputee
Mr. Hahntwo Not Reached
blowouts, 2nd was
Michelin, 60-65
mph, lost control,
no injury, now has
Michelin tires
Mr. Lolmaugh Challenged for Stricken for Cause
blowouts due to cause by Plaintiffs by Court
debris on job sites on basis his business
 needed him,
 Michelin objected,
 stricken
Ms. Israelpassenger Not Reached
in vehicle
with blowout, controlled
Mr. Schlaffno Not Reached
blowout but outside
tread of tire
came off 15-18
years ago
Mr. Prowler Challenged for Stricken for Cause
two blowouts, most cause by Michelin by Court
recent 3-4 years on basis of
ago statement manufacturer
 would
 hide latent defect,
 Plaintiff objected,
 stricken
Mr. Minor Not Reached
blowout 5 mos. ago
on Firestone tire
at 60 mph
Ms. Deveroomen Challenged for Stricken for Cause
blowout 28 cause by Plaintiffs by Court
years ago at 35 on basis mother
mph, controlled vehicle worked for Jones
to stop Foster, no objection,
 stricken
Mr. Fleishman Challenged for Stricken for Cause
blowout at 70 mph cause by Michelin by Court
on Cooper tire, on basis he said he
stopped vehicle could not be fair
without incident due to experience
 with DES litigation,
 no objection,
 stricken