PER CURIAM.
 

 This case reaches us after the United States District Court for the Northern District of Florida granted the defendant’s petition for habeas corpus in part and ordered a new direct appeal from his criminal conviction in the state circuit court. We conclude that the defendant is entitled to a new trial, because the trial court committed reversible error by failing to determine whether the state’s purported race-neutral reasons for striking two jurors during
 
 voir dire
 
 were genuine or a pretext.
 

 Timothy Bellamy was charged with one count of burglary of a dwelling with an assault, one count of armed robbery with a firearm, and one count of aggravated battery with a deadly weapon. The charges arose out of a home invasion robbery in 1999 in Jefferson County. The defendant is a black male, and the two victims were white.
 

 At jury selection, the defendant objected to a number of the state’s peremptory
 
 *897
 
 challenges to various jurors. The challenges to two potential jurors, named Branham and Blow, are involved in the present appeal. Both Branham and Blow were black. Defense counsel objected to the state’s peremptory challenge to these individuals, based on
 
 Neil v. State,
 
 457 So.2d 481 (Fla.1984), but the trial court overruled both objections and allowed the state to strike the jurors.
 

 Ms. Blow revealed during
 
 voir dive
 
 that three of her children and three of her grandchildren had been robbed in Leon County. When asked whether she thought that this would impact her ability to be a fair and impartial juror, she replied, “No.” Later, the following exchange occurred:
 

 PROSECUTOR: We excuse Blow.
 

 DEFENSE COUNSEL: We are going to make a
 
 Neil
 
 challenge again. PROSECUTOR: Children were victims of a robbery.
 

 DEFENSE COUNSEL: How does that hurt your case?
 

 PROSECUTOR: It is not a function of what it hurts or not.
 

 DEFENSE COUNSEL: That is a pretext.
 

 STATE: It is not a pretext.
 

 DEFENSE COUNSEL: ... [L]et me make it clear that Barbara Blow was black, [potential juror] Bassa was black, [potential juror] Willie Roberts was black, Edward Bellamy is black.... I am just putting on the record here that you have excused every black that’s been on this jury.
 

 THE COURT: ... [H]e has not.... [Prospective juror Cuyler] is on the jury, and Huggins is on the jury.
 

 Questioning of Ms. Branham by the prosecutor revealed that she was a senior technician with the Florida Department of Corrections. She further stated that she worked in the main office of the DOC in Tallahassee and that her main responsibility was incorporating sentences with the sentence an inmate had already served. When asked whether there was anything about her employment that would affect her ability to be fair and impartial, Bran-ham replied, “No.” The following exchange subsequently took place when Branham was included in the group of potential jurors from which the jury was being chosen:
 

 PROSECUTOR: We would strike Ms. Branham, number two....
 

 DEFENSE COUNSEL: We will make another
 
 Neil
 
 challenge on Ms. Branham.
 

 PROSECUTOR: She works for the Department of Corrections. And as it says here, friends can be enemies. That’s what we learned at the seminar. Don’t necessarily assume — •
 

 DEFENSE COUNSEL: She is another black female.
 

 Once the jury was selected but before it was sworn, defense counsel moved for a new trial, asking that the entire jury be dismantled and a new jury be chosen. The motion was based on the defendant’s
 
 Neil
 
 challenges to the black jurors, including Branham and Blow, on whom he asserted the state had improperly used peremptory strikes. The trial court denied the motion, stating, “I have heard all of the
 
 Neil
 
 challenges that have been made, and there have been race neutral reasons given for the challenges. And the state has not challenged solely African-American prospective jurors but has challenged some Caucasians also.”
 

 The jury was then sworn, and the trial commenced. At the conclusion of the trial, the defendant was found guilty of one count of burglary of a dwelling with an assault, one count of armed robbery with a firearm, and one count of the lesser included offense of battery. The trial court sen
 
 *898
 
 tenced him to consecutive life sentences on the burglary and robbery counts.
 

 The defendant appealed his conviction and sentences to this Court, raising one issue: whether the trial court improperly limited cross-examination of the cooperating codefendant, who had received a six-year sentence. We affirmed without written opinion on August 13, 2002.
 
 See Bellamy v. State,
 
 825 So.2d 370 (Fla. 1st DCA 2002).
 

 The defendant then filed a petition for writ of habeas corpus in this Court, alleging ineffective assistance of appellate counsel. He argued that his appellate attorney was ineffective for failing to raise claims based on the state’s improper peremptory challenges of black jurors during
 
 voir dire.
 
 We denied the petition.
 
 See Bellamy v. State,
 
 843 So.2d 261 (Fla. 1st DCA 2003). Then the defendant filed a rule 3.850 post-conviction motion in the trial court, raising multiple claims of ineffective assistance of counsel. The trial court summarily denied the motion on March 8, 2004, and we affirmed the denial on January 10, 2005.
 
 See Bellamy v. State,
 
 894 So.2d 245 (Fla. 1st DCA 2005).
 

 On May 31, 2005, the defendant filed a petition for writ of habeas corpus in the United States Court for the Northern District of Florida, raising,
 
 inter alia,
 
 the issue of the peremptory challenges to Branham and Blow. The magistrate judge issued a written order and recommendation, finding that the defendant was entitled to relief. She determined that the trial court had not evaluated the state’s facially race-neutral responses to the defendant’s
 
 Neil
 
 claims or made a determination whether there was purposeful discrimination, as required by
 
 Batson v. Kentucky,
 
 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Further, the magistrate found that the defendant’s appellate counsel was ineffective for failing to raise the
 
 Batson
 
 issues on appeal and that these issues would have succeeded on appeal. Based on these findings, the magistrate recommended that the defendant receive a new trial.
 

 After reviewing the magistrate’s recommendation and the exceptions the parties filed thereto, the senior district judge issued an order granting the writ of habeas corpus as to the
 
 Batson
 
 issues regarding jurors Blow and Branham. However, he rejected the magistrate’s recommendation of a new trial and ordered instead that the defendant be allowed to file a new appeal in this court. The case is now before us on a new direct appeal from the state court judgment and sentence, as ordered by the federal habeas court.
 

 When a party objects to a peremptory challenge as being based on race, the test for determining whether the challenge is valid was established by the U.S. Supreme Court, in
 
 Batson v. Kentucky,
 
 476 U.S. 79, 96-98, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). As the Florida Supreme Court explained in
 
 Melbourne v. State,
 
 679 So.2d 759 (Fla.1996), the analysis has three steps.
 

 A party objecting to the other side’s use of a peremptory challenge on racial grounds must: a) make a timely objection on that basis, b) show that the venireperson is a member of a distinct racial group, and c) request that the court ask the striking party its reason for the strike. If these initial requirements are met (step 1), the court must ask the proponent of the strike to explain the reason for the strike.
 

 At this point, the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step 2). If the explanation is facially race-neutral and the court believes that, given all the circumstances
 
 *899
 
 surrounding the strike, the explanation is not a pretext, the strike will be sustained (step 3). The court’s focus in step 3 is not on the reasonableness of the explanation but rather its genuineness. Throughout this process, the burden of persuasion never leaves the opponent of the strike to prove purposeful racial discrimination.
 

 Melbourne,
 
 679 So.2d at 764 (footnotes omitted);
 
 see also Purkett v. Elem,
 
 514 U.S. 765, 767-68, 115 S.Ct. 1769, 131 L.Ed.2d 834,
 
 reh’g denied,
 
 515 U.S. 1170, 115 S.Ct. 2635, 132 L.Ed.2d 874 (1995);
 
 Hoskins v. State,
 
 965 So.2d 1, 7 (Fla.2007).
 

 The court in
 
 Melbourne
 
 explained that genuineness means whether the strike was based on purposeful discrimination. Once the proponent of the strike offers a race-neutral reason, the court must proceed to the genuineness determination in step three. It may not skip step three or conflate it with step two. While the justification for the strike need not be plausible on its face, if it is race-neutral, the court must go on to evaluate the persuasiveness of the reason in the genuineness determination of step three.
 

 It is not until the third step that the persuasiveness of the justification becomes relevant — the step in which the trial court determines whether the opponent of the strike has carried his burden of proving purposeful discrimination. At that stage, implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination. But to say that a trial judge may choose to disbelieve a silly or superstitious reason at step three is quite different from saying that a trial judge must terminate the inquiry at step two when the race-neutral reason is silly or superstitious. The latter violates the principle that the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike.
 

 Purkett,
 
 514 U.S. at 768, 115 S.Ct. 1769.
 

 In the present case, the record reflects that, although the trial court found the state’s reason for striking jurors Blow and Branham to be race-neutral, it did not engage in the genuineness determination part of the analysis at all. When the defendant raised a
 
 Neil
 
 challenge to the state’s striking of Blow, the state offered the race-neutral reason that her children had been the victims of robbery. The defense asserted that the reason was a pretext, which the prosecutor denied. Defense counsel then stated that the prosecution had stricken all the black prospective jurors, but the trial court pointed out that two black venire members, Cuyler and Huggins, remained. However, as the federal magistrate noted in her Order Report and Recommendation, the state later excused both Cuyler and Huggins after the trial court pointed out that they remained on the jury. Prior to this, the state had stricken eight black potential jurors.
 

 The state’s reason for striking juror Blow — that her children had been the victims of a robbery — does not logically support the
 
 state,
 
 as opposed to the defendant, striking this juror. As the magistrate explained, “[i]f anything, any potential bias held by the juror would have been against [the defendant], as the juror would be inclined to sympathize with the victims of the robbery.” The fact that the state dismissed the defendant’s question as to how that would hurt the state’s case suggests that the prosecutor believed that any race-neutral reason was sufficient to allow it to strike a black juror. However,
 
 Bat-son
 
 and
 
 Melbourne
 
 require that, after the proponent of the strike has offered a race-neutral explanation, the court must go on to determine whether the opponent of the strike has established purposeful discrimi
 
 *900
 
 nation.
 
 See, e.g., Batson,
 
 476 U.S. at 96-98, 106 S.Ct. 1712.
 

 Despite the pattern of striking black jurors and the unreasonable, albeit facially race-neutral, justification the state offered for striking Blow, the trial court did not make a finding as to whether the reason offered for the strike was a pretext. Instead, it simply stated, “I have heard all of the
 
 Neil
 
 challenges that have been made, and there have been race-neutral reasons given for the challenges.” It did not make the next step of going on to the third part of the analysis, determining the genuineness of the state’s reasons.
 

 Likewise, after hearing the state’s purportedly race-neutral reason for striking Branham — that she worked for the De-pai’tment of Corrections — the judge failed to make a record determination whether the reason was pretextual. The reason certainly was no more logical on its face than was the reason given for striking Blow. A DOC employee would naturally be perceived as more sympathetic to the state than to the defense, if any bias existed. Yet the trial court went no further than to find that the reason offered for striking Branham was race-neutral. It failed to make a finding whether there was any purposeful discrimination.
 

 After the jury was selected but before it was sworn, the trial court denied the defendant’s motion for a new trial, stating, “I have heard all of the
 
 Neil
 
 challenges that have been made, and there have been race neutral reasons given for the challenges. And the state has not challenged solely African-American prospective jurors but has challenged some Caucasians also.” Whether the state struck whites as well as blacks is irrelevant under the
 
 Batson
 
 analysis. The question is whether, in the case of any individual juror, the reason for the strike was purposeful discrimination.
 
 See United States v. David,
 
 803 F.2d 1567, 1571 (11th Cir.1986) (explaining that, even if a white juror was also struck, the striking of one black juror for purposefully racially discriminatory reasons violates the Equal Protection Clause).
 

 This case is factually similar to
 
 Simmons v. State,
 
 940 So.2d 580 (Fla. 1st DCA 2006). In
 
 Simmons,
 
 this court held that the record indicated that the trial court failed to conduct the third step in the
 
 Batson/Melboume
 
 analysis. Defense counsel challenged the state’s reason for striking a potential juror, and the trial court responded, “I will allow the challenge. That is a race-neutral reason. Whether or not we view it favorable for the State or favorable for the Defense, it is a race-neutral reason.”
 
 Simmons,
 
 940 So.2d at 582. This court explained that, in so doing, the trial court reversibly erred: “By focusing merely on the fact the State offered a seemingly race-neutral reason, and accepting that the prosecution’s reason for the strike may be solely for the benefit of the defense, it appears that the trial court bypassed the genuineness inquiry required in the
 
 Melbourne
 
 analysis.”
 
 Simmons
 
 at 582-83.
 

 Relying on
 
 Simmons,
 
 this court recently reversed and remanded for a new trial in another case in which the trial court failed to make the required finding as to pretext.
 
 See Tetreault v. State,
 
 24 So.3d 1242 (Fla. 1st DCA 2009) (reversing and remanding for new trial where the state offered a gender-neutral reason for striking males from the jury panel, but the trial court “did not make a finding, implicit or otherwise, that the gender-neutral reasons were genuine. Accordingly, because the record does not indicate that the trial court engaged in the required third step of the
 
 Melbowme
 
 analysis, we are required to reverse and remand for a new trial.”).
 

 
 *901
 
 The instant appeal presents the same situation as existed in
 
 Simmons
 
 and
 
 Te-treault:
 
 a record devoid of any findings that the purportedly neutral reasons for striking jurors Blow and Branham were not pretextual. Therefore, as in
 
 Simmons
 
 and
 
 Tetreault,
 
 the defendant’s conviction must be reversed and the case remanded for a new trial.
 

 Reversed.
 

 WEBSTER, PADOVANO, and ROWE, JJ., concur.