POLEN, J.
Gregory Victor appeals the final judgment of the trial court, adjudicating him guilty of carjacking after a jury trial. He argues that the trial court erred by not conducting a “genuineness analysis” pursuant to Melbourne v. State, 679 So.2d 759 (Fla.1996), after he objected to the use of numerous peremptory challenges used by the State to strike black prospective jurors. We agree, reverse, and remand for a new trial.
After a party raises a timely objection that a peremptory challenge is being used in a racially discriminatory manner (step 1),
the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step 2). If the explanation is facially race-neutral and the court believes that, given all the circumstances surrounding the strike, the explanation is not a pretext, the strike will be sustained (step 3). The court’s focus in step 3 is. not on the reasonableness of the explanation but rather its genuineness. Throughout this process, the burden of persuasion never leaves the opponent of the strike to prove purposeful racial discrimination.
Id. at 764 (footnotes omitted).
[S]tep 2 of the Melbourne test requires only that the proffered reasons be facially ethnic-neutral. If the reasons are not ethnic-based, the trial judge must then assess the genuineness of the reasons in order to determine whether they are pretextual. A conclusion that the proffered reasons are not ethnic-neutral is not synonymous with a finding of pretext. The former requires only a superficial analysis to determine facial, ethnic neutrality, whereas the latter requires a judicial assessment of credibility of both the proffered reasons and the attorney or party proffering them.
Greene v. State, 718 So.2d 334, 335 (Fla. 3d DCA 1998) (emphasis added). See also Bellamy v. Crosby, 31 So.3d 895, 899 (Fla. 1st DCA 2010) (“Once the proponent of the strike offers a race-neutral reason, the court must proceed to the genuineness determination in step three. It may not skip step three or conflate it with step two.”).
Although Melbourne “does not require the trial court to recite a perfect script or incant specific words in order to properly comply with its analysis under step three,” the trial court must still “weight ] the genuineness of a reason just as it would any other disputed fact.” Wimberly v. State, 118 So.3d 816, 821 (Fla. 4th DCA 2012) (quoting Hayes v. State, 94 So.3d 452, 463 (Fla.2012)). “Therefore, where the record is completely devoid of any indication that the trial court considered circumstances relevant to whether a strike was exercised for a discriminatory purpose, the reviewing court, which is confined to the cold record before it, cannot assume that a genuineness inquiry was actually conducted in order to defer to the trial court.” Id. at 821 (quoting Hayes, 94 So.3d at 463). In fact, “Florida’s appellate courts have fairly consistently reversed for a new trial where the record provides no indication that the trial court engaged in the required genuineness inquiry.” Id. (quoting Hayes, 94 So.3d at 463-64).
In Wimberly, we approved of the trial court’s genuineness analysis pursuant to Melbourne because the record in that case reflected that the court assessed “the credibility of the proffered reasons and determine[d] whether these reasons were genuine in light of the circumstances of the case *1173 and the total course of the voir dire in question.” Id. at 822.
The record indicates that, when the defense raised Melbourne objections to jurors 3 and 7, the court referred to relevant circumstances — including the racial make-up of the venire, prior strikes exercised against the same racial group, and a strike based on a reason equally applicable to an unchallenged juror — in determining that the state’s proffered reasons for striking those jurors were genuine. The fact that the trial court did not incant magic words to indicate that it considered the same circumstances when striking juror 23 does not suggest to us that the court did not undertake a genuineness inquiry at that time.
Id. at 826 (emphasis added).
However, in Bellamy, the First District reversed the defendant’s conviction and remanded for a new trial because the record was devoid of any findings that the purportedly neutral reasons for striking the jurors was not pre-textual. Bellamy, 31 So.3d at 896, 901. Although the trial court found the State’s reasons for striking the jurors to be race-neutral, “it did not engage in the genuineness determination part of the analysis at all.” Id. at 899.
[T]he trial court did not make a finding as to whether the reason offered for the strike was a pretext. Instead, it simply stated, “I have heard all of the Neil[1] challenges that have been made, and there have been race-neutral reasons given for the challenges.” It did not make the next step of going on to the third part of the analysis, determining the genuineness of the state’s reasons.
Id. at 900. See also Tetreault v. State, 24 So.3d 1242, 1244 (Fla. 1st DCA 2009) (“Like Simmons,[2] the court below bypassed the third step in the Melbourne analysis and focused solely on the fact that the State’s reasons behind its peremptory strikes were gender-neutral. It did not make a finding, implicit or otherwise, that the gender-neutral reasons were genuine. Accordingly, because the record does not indicate that the trial court engaged in the required third step of the Melbourne analysis, we are required to reverse and remand for a new trial.”).
Here, after the State moved to strike a prospective juror, Ms. G., a black female, defense counsel asked for a race-neutral reason. The State responded: “She was arrested and she mentioned her son was arrested.” Defense counsel noted that the State had not moved to strike other members on the panel who were also arrested, to which the State argued: “Not that they were arrested, the family members were arrested. There’s a difference, counselor.” The trial court responded: “The court finds there is a race-neutral reason. I have her down as being arrested as well. State’s two. With Ms. C. as juror number six. Defense. And Ms. C. is a black female.”
The State then moved to strike Ms. C. Defense counsel asked for a race-neutral reason for the strike, and the State noted that she was arrested for a code violation. Defense counsel argued that when she was questioned, she said she would be impar *1174 tial. The trial court responded: “But it’s still a race-neutral reason.... ”
After the State moved to strike the only black male prospective juror, Mr. H., defense counsel again asked for a race-neutral reason. The State supported its strike by arguing that Mr. H.’s family member was arrested for attempted murder, and
more so than that, when he responded to me about when I was asking, again, negative feelings towards law enforcement, your Honor may recall how he jumped and talked about the shoot to kill order that was involving his nephew, for no reason, that he wanted to go into. That’s my reason.
The following transpired:
Defense: Judge, he didn’t do it for no reason. He was specifically asked by the state attorney about that.... The question was posed and he responded to the question. That’s what happened. That’s what happened with the other people on the panel who also had problems. The State has not shown—
Court: The Court finds it’s race-neutral.
The State then moved to strike Ms. N., a black female:
State: When she was talking about the police to [defense counsel], as to what they will and won’t do, she made a point of jumping up and saying, I have personal experience with a police officer lying, and I quote, to make a point.
Defense: Judge, she didn’t jump up at all. She just said a police officer lied, and that was to the point of saying whether or not police officers will lie. This is getting to be a pattern. We’re striking all of the black prospective panel.
State: For the record, your Honor, Ms. D. is on the panel. She is an African American female.
Defense: The State has made strikes against or cause challenges against one, two, three, four, five, six — no. I’m sorry. Six. Seven, and this will bfe eighth black member of the prospective panel.
Court: The Court finds a race-neutral reason.
The State then moved to strike Ms. J., another black female, based on the fact that she was on community service. Defense counsel objected and argued that the State was engaging in a pattern of discrimination. The State noted that a black female remained on the panel, and the trial court allowed the strike, merely stating, “okay.”
As was the case in Bellamy, Tetreault, and Simmons, the trial court found the State’s reasons to be race neutral but never considered the genuineness of the State’s purported race-neutral reasons, even after appellant alleged purposeful discrimination. Instead, the trial court merely restated its finding that the strikes were based on race-neutral grounds. Consequently, we find this case distinguishable from Wimberly.
Moreover, we conclude that had the trial court inquired as to the genuineness of the State’s strikes, it would have concluded that the State’s strike as to Ms. G. was pretextual. This is because earlier in the voir dire proceeding, defense counsel moved to strike a prospective juror, Mr. M., for cause because “[h]e said something about a family member that went to jail....” The State responded: “He was responsive. He said he could be fair and impartial. I mean just about more than half the jurors on this panel has a family member who has been arrested. He said it wasn’t an issue. He said he could be fair and impartial.” (Emphasis added).
According to the State, Mr. M. (a white prospective juror) should not have been stricken from the panel based on the fact *1175 that he had a family member who had previously been arrested. However, the State moved to strike Ms. G. (a black prospective juror) on this reason alone. Based on this record, we find the State’s reason for striking Ms. G. to be pretextual. See Wimberly, 118 So.3d at 821 (“the state’s proffered reason for striking juror 23 applied to only one other person, who was also stricken, albeit for a different reason”). Regardless, the trial court never pressed the State to show that its reason for the strike was genuine rather than pretextual.[3] Instead, the trial court erroneously conflated step 2 of Melbourne with step 3.
Here, the trial court did not explicitly perform an on-the-record genuineness analysis. Because the trial court also failed to refer to relevant circumstances, such as the strike based on the reason equally applicable to an unchallenged juror (Mr. M. and Ms. C.), we cannot determine, on this record, that the trial court implicitly considered the genuineness of the State’s proffered reasons. The record in this case is devoid of any findings that the purportedly neutral reasons for the State’s strikes were not pretextual. In accordance with Melbourne, we reverse and remand for a new trial.

Reversed and Remanded.

GROSS and LEVINE, JJ„ concur.

. State v. Neil, 457 So.2d 481 (Fla.1984).

. Simmons v. State, 940 So.2d 580 (Fla. 1st DCA 2006). In Simmons, when the defense challenged the prosecution’s reason for striking a potential juror, the trial court stated, "I will allow the challenge. That is a race-neutral reason. Whether or not we view it favorable for the State or favorable for the Defense, it is a race-neutral reason.” Id. at 582. The First District held that "[b]y focusing merely on the fact the state offered a seemingly race-neutral reason, and accepting that the prosecution’s reason for the strike may be solely for the benefit of the defense, it appears that the trial court bypassed the genuineness inquiry required in the Melbourne analysis.” Id. at 582-83.

. Cf. Michelin N. Am., Inc. v. Lovett, 731 So.2d 736, 740-41 (Fla. 4th DCA 1999) (‘'[Although the trial court below did not use the magic words of Melbourne while conducting the Neil inquiry, the court pressed [the opponent of the challenge] to respond to [the proponent of the challenge’s] reason regarding [the prospective juror’s] experience with a Michelin blowout, thus indicating the court found this reason to be facially race-neutral. After [the opponent of the challenge] responded that [the proponent of the challenge] accepted other jurors with similár experience with a Michelin blowout, a fact not borne out by the record, the court then denied Michelin’s challenge. Although the trial court did not use the language of Melbourne, its denial amounted to a finding Michelin’s reason was not genuine.”).