

**FILED**

Sep 15 2015, 8:40 am

CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| David A. Smith | Gregory F. Zoeller |
| McIntyre & Smith | Attorney General of Indiana |
| Bedford, Indiana | |
| | Chandra K. Hein |
| | Deputy Attorney General |
| | Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Charles R. Strunk, | September 15, 2015 |
| *Appellant-Defendant,* | Court of Appeals Case No. 47A01-1411-CR-487 |
| v. | Appeal from the Lawrence Superior Court; |
| | The Honorable William G. Sleva, Judge; |
| State of Indiana, | 47D02-1305-FA-560 |
| *Appellee-Plaintiff.* | |

**May, Judge.**

[1] Charles R. Strunk appeals his conviction of two counts of sexual misconduct with a minor, one as a Class A felony[1] and the other as a Class B felony.[2] Strunk argues the trial court abused its discretion when it limited Strunk's cross-examination of J.B., admitted Strunk's Facebook message to J.B., and admitted only an excerpt of Strunk's statement to the police. We affirm.

## Facts and Procedural History

[2] J.B. and her family lived in Heltonville, Indiana until J.B. was in sixth grade. While in Heltonville, J.B. became a close friend of Strunk's daughters, and the Strunk family became friendly with J.B.'s family. After J.B.'s father passed away, J.B. and her family moved to Mitchell, Indiana, where Strunk, his wife, and their daughters would visit J.B. and her family.

[3] On May 8, 2013, fifteen-year-old J.B. exchanged Facebook messages with Strunk. She testified, "I was wanting him to take me mushroom hunting." (Tr. at 52.) Strunk told J.B. that he would take her mushroom hunting at some point. Around 5:00 p.m. that day, Strunk arrived at J.B.'s house unexpectedly. Around 6:00 p.m., Strunk and J.B. decided to walk through the woods behind J.B.'s house to look for mushrooms.

[4] The two came to the bottom of a hill and J.B. sat down on some rocks. Strunk stood next to J.B., then "pull[ed] out a green piece of paper and a knife and he

---

[1] Ind. Code § 35-42-4-9(a)(2) (2007).

[2] Ind. Code § 35-42-4-9(a)(1) (2007).

starts reading the stuff on the paper." (*Id.* at 60.) Stunk held up the knife and told J.B. to remove her clothes. J.B. complied and Strunk then pulled out a Sharpie pen and began writing symbols on J.B.'s chest, stomach, lower stomach, and inner thighs. Strunk then began to perform oral sex on J.B. Strunk stopped, stood up, and told J.B. that it was her turn. He took off his pants and underwear and forced J.B. to perform oral sex on him. After five minutes, J.B. heard her sister screaming her name. J.B. told Strunk that she needed to check on her sister. She put her clothes on and walked toward her house.

Once J.B. and Strunk reached the backyard, Strunk began to have a seizure. J.B. testified Strunk had multiple seizures that day. Strunk remained at J.B.'s house until he recovered later that night. J.B.'s mother called Strunk's wife, Sally, and told her about the seizures. Sally testified Strunk did not want medical attention and she was not able to take Strunk home. She asked J.B.'s mother to send Strunk home when the seizures were over. Around 11:00 p.m., Strunk went to his car. He sat in his car for an hour, then left around midnight.

After Strunk left, he sent J.B. a Facebook message::

> im sorry about what happened. But if yoi possibly can we need to
> finish the ritual. Untill we do i must suffer the aftermath of it all. That
> is what caused the seizures. And it will only get worse from there. So
> please save me from this suffering. Please I beg of you.

(State's Ex. 19) (spelling errors in original). At this point, J.B. "curled up in a ball on the [kitchen] island crying her eyes out shaking back and forth." (Tr. at

325.) After a few minutes, J.B. calmed down and reported Strunk had molested her in the woods. Her mother called Sally, informed her of J.B.'s allegations against Strunk, and advised Sally that she intended to call the police. She then called the police.

[7] Lawrence County Police Department (LCPD) officers Justin Shirley and Jerome Hettle responded to the call. The Officers took photographs of the markings on J.B.'s torso and legs and the message from Strunk. Hettle and Shirley called LCPD Detective Phil Wigley.

[8] J.B. was taken to a hospital and examined by Melissa Mitchell, a registered nurse certified as a "sexual assault nurse examiner." (*Id*. at 318.) Mitchell collected physical evidence, including photographs of the markings and a rape kit. Heather Crystal, a forensic biologist with the State Police, performed Y-STR analysis of DNA found on J.B.[3] Crystal could not exclude Strunk and all his male relatives as being contributors of that DNA.

[9] Detective Wigley tried to contact Strunk by cell phone but was unsuccessful. An arrest warrant was issued and after Strunk's arrest Detective Wigley interviewed him. The State charged Strunk with Class A felony sexual misconduct with a minor and Class B felony sexual misconduct with a minor.

---

[3] Y-STR analysis "is the DNA analysis from the 'Y' chromosome which is found only in males. It's passed on directly from a father to his son." (Tr. at 483.)

A jury found Strunk guilty as charged, and the trial court entered judgments of conviction.

# Discussion and Decision

We typically review admission of evidence for an abuse of discretion. *King v. State*, 985 N.E.2d 755, 757 (Ind. Ct. App. 2013), *trans. denied*. Thus, we reverse only if the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Id.* We will not reweigh the evidence, and we will consider conflicting evidence in favor of the trial court's ruling. *Id.* However, we must also consider uncontested evidence favorable to the defendant. *Id.* A trial court ruling will be upheld if it is sustainable on any legal theory supported by the record, even if the trial court did not use that theory. *Rush v. State*, 881 N.E.2d 46, 50 (Ind. Ct. App. 2008). Error in the admission or exclusion of evidence is to be disregarded as harmless unless it affects the substantial rights of a party. *Id.*

## *Limitation of Cross-Examination*

The right to cross-examine witnesses is guaranteed by the Sixth Amendment of the United States Constitution and Article I section 13 of the Indiana Constitution. "The conduct of cross-examination is within the discretion of the trial court, and only a total denial will result in an error of constitutional proportion." *Stonebraker v. State*, 505 N.E.2d 55, 58 (Ind. 1987), *reh'g denied*. "Anything less than a total denial is viewed as a regulation of the scope of

cross-examination by the trial court, and will be reviewed for an abuse of discretion." *Id*. at 59.

[12] Strunk argues the trial court should have allowed him to cross-examine J.B. about her marijuana usage the night of the molestation. "Evidence of a victim's drug use is generally irrelevant except in relation to the victim's mental capacity to recall the crime and testify about it." *Pannell v. State*, 686 N.E.2d 824, 826 (Ind. 1997). "The credibility of a witness may be attacked by showing a defect of capacity in the witness to observe, remember or recount the matters testified about." *Lusher v. State*, 390 N.E.2d 702, 704 (Ind. Ct. App. 1979), *reh'g denied*.

[13] Outside the presence of the jury, Strunk examined J.B. as part of his offer of proof. J.B. testified that, after the molestation occurred, she went with her mother to a gas station where a friend gave her a single marijuana cigarette. J.B. recalled that she did not smoke it until after the police were called, which was six to seven hours after the molestation. J.B. testified her account of the molestation was accurate and smoking a single marijuana cigarette in no way affected her ability to remember the molestation.

[14] There is no evidence J.B.'s smoking of a single marijuana cigarette six to seven hours after the molestation impaired her perception, ability to remember, or ability to testify about the molestation. *See id.* (drug use may not be used to attack the credibility of a witness unless evidence tends to show witness was under the influence of drugs either at the time of trial or at the time of the events

testified to).  The trial court did not abuse its discretion by limiting Strunk's cross-examination of J.B.

## *Facebook Message*

[15]  Strunk argues the trial court abused its discretion when it admitted a message he sent to J.B. via Facebook because the State did not properly authenticate the message. "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."  Ind. Evid. R. 901. Authentication of an exhibit can be established by either "direct or circumstantial evidence."  *Newman v. State*, 675 N.E.2d 1109, 1111 (Ind. Ct. App. 1996).  Testimony that an item is what it is claimed to be, by a witness with knowledge, is sufficient to authenticate an item.  Evid. R. 901.  Distinctive characteristics like "the appearance, contents, substance, [and] internal patterns" taken together with all the circumstances is another way to authenticate an item of evidence.  *Id*.  "Any inconclusiveness regarding the exhibit's connection with the events at issue goes to the exhibit's weight, not its admissibility."  *Pavlovich v. State*, 6 N.E.3d 969, 976 (Ind. Ct. App. 2014), *trans. denied*.

[16]  During J.B.'s testimony, the trial court admitted screen shots of Strunk's Facebook profile and his message to J.B.  J.B. testified that she had communicated with Strunk through the same profile page on previous occasions.  She knew it was Strunk's page because Strunk's profile picture was a wolf and the screen shot in Exhibit 18 contained the same picture.  J.B. knew

the screen shot was Strunk's Facebook profile because they had two mutual friends listed on Strunk's page, one of which was her mother. J.B.'s mother also identified Exhibit 18 as a screen shot of Strunk's Facebook profile and verified that she was one of Strunk's mutual friends.

[17] J.B. testified Strunk left her house around midnight and that after Strunk left, J.B. received his message through the same Facebook page she had used to communicate with Strunk earlier that day. The trial court properly admitted the Facebook message. *See id.* at 977 (showing that the message originated with the alleged sender's personal cell phone, under circumstances in which it is reasonable to believe that only the alleged sender would have had access, creates a reasonable probability the item is authentic), *trans. denied*.

### *Strunk's Statement to Police*

[18] The trial court did not abuse its discretion when it refused to admit the entire recording of a conversation between Strunk and Detective Wigley.[4] During trial, the State asked Detective Wigley about Strunk's interview with the police on May 17, 2013. After the State's direct examination, Strunk asked to make

---

[4] In Strunk's reply brief, Strunk said the State misapprehended his argument in his opening brief and that the "actual argument on appeal . . . is that the trial court erred when it refused to permit Strunk to cross-examine Wigley about the *whole* conversation he had with Strunk." (Reply Br. of Appellant at 14) (emphasis on original). In his Brief of Appellant, Struck stated:

> The final issue before the Court is whether the trial court erred when it refused to admit the entire recording of a conversation between Strunk and lead investigator Phil Wigley after Wigley testified misleadingly about the whole conversation, omitting key aspects. This decision is erroneous under both Evidence Rule 106 and the common-law doctrine of completeness.

(Br. of Appellant at 37.)

an offer of proof because he wanted to cross-examine Detective Wigley about the interview, specifically about Strunk's report during the interview that J.B. had a motive to lie because she allegedly was upset that Strunk threw out her bag of marijuana. The trial court reasoned that because Strunk's interview was recorded or reduced to writing and because Strunk could admit that recording if he wished his assertion admitted, Strunk could not cross-examine Detective Wigley about the matter.

[19] Strunk called Detective Wigley as a witness during his case-in-chief but did not try to admit the existing recording. Later, during the State's rebuttal, the State called Detective Wigley to the stand again and he testified about another portion of his conversation with Strunk on May 17, 2013. The State submitted Exhibit 31, which was an excerpt from the videotaped interview between Detective Wigley and Strunk on May 17, 2013, wherein Strunk said he had accidentally left his phone in his residence on the day in question. In response to the State's offer of this excerpt, Strunk affirmatively stated, "No objection," and the excerpt was admitted. (Tr. at 605.)

[20] Strunk waived any alleged error in the entire videotaped statement not being admitted when he affirmatively stated he had no objection to a portion of the videotaped statement that was admitted. *See Hayworth v. State*, 904 N.E.2d 684, 693-694 (Ind. Ct. App. 2009) ("By stating 'No objection,' we find that Hayworth has waived her objection to that evidence.") Strunk did not renew his objection, ask for a continuing objection, or maintain his position in any way.

[21] Notwithstanding the waiver, the admission of the excerpt was not error. Evidence Rule 106 states: "If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part – or any other writing or recorded statement – that in fairness ought to be considered at the same time." Ind. Evid. R. 106. "Evid. R. 106 is designed to avoid misleading impressions caused by taking a statement out of its proper context or otherwise conveying a distorted picture by the introduction of only selective parts." *Liebetenz v. State*, 717 N.E.2d 1242, 1248 (Ind. Ct. App. 1999), *trans. denied*. If portions do not explain or are irrelevant to the portions already introduced, a court is not required to admit the remainder of the statement. *Id*. The remainder of the statement or document is subject to the general rules of admissibility and portions found to be immaterial, irrelevant, or prejudicial should not be admitted. *Brown v. State*, 728 N.E.2d 876, 878 (Ind. 2000), *abrogated on other grounds by Fajardo v. State*, 859 N.E. 2d 1201, 1206-1207 (Ind. 2007).

[22] Strunk has not argued that the admitted excerpt gave the jury a misleading impression that would have been corrected by the admission of the entire statement.[5] The only thing that Strunk talked about on the admitted excerpt was his leaving his phone at his residence on the day in question. As there was

---

[5] Instead, Strunk asserts "the entire statement would have cast doubt on J.B.'s credibility, and it would have shown that J.B. had a motive to fabricate her allegations." (Br. of Appellant at 42.) However, as the admitted excerpt did not involve discussion of J.B.'s motive, there was no misimpression to "correct" by admitting the remainder of the recording. Thus, Evidence Rule 106 did not require the remainder be admitted on that basis.

no "misleading impression" created by the admission of the excerpt, the trial court was within its discretion to decline to admit the entire recording. *See Liebetenz,* 717 N.E.2d at 1248.

# Conclusion

[23] The trial court did not abuse its discretion when it limited Strunk's cross-examination of J.B., admitted Strunk's Facebook message to J.B., or admitted only an excerpt of Strunk's statement to the police. We accordingly affirm.

[24] Affirmed.

Robb, J., and Mathias, J., concur.