## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 20 2018, 6:10 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Brandon E. Murphy
Cannon Bruns & Murphy
Muncie, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caroline G. Templeton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Brian J. Offringa,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

July 20, 2018

Court of Appeals Case No.
18A-CR-316

Appeal from the Delaware Circuit Court

The Honorable John M. Feick, Judge

Trial Court Cause No.
18C04-1310-FD-216

**Bailey, Judge.**

# Case Summary

Brian Offringa ("Offringa") appeals his conviction for Strangulation, as a Class D felony.[1] He presents the sole issue of whether the trial court abused its discretion in the admission of evidence. We affirm.

# Facts and Procedural History

On September 11, 2013, Offringa entered the showroom of Benson's Motorcycles in Muncie, Indiana ("Benson's") and greeted some of the female employees by saying "hey sluts." (Tr. Vol. II, pg. 79.) Casey Schmitt ("Schmitt") verbally confronted Offringa, who responded by grabbing Schmitt and declaring that he could "do what I want." (*Id.*, pg. 80.)

Offringa then entered the office of writer Kimberly Wilkerson ("Wilkerson") and inquired about the status of a motorcycle he had left for repair. Wilkerson advised Offringa that the specialty parts for his motorcycle were on order but had not yet arrived; the news made Offringa unhappy. Offringa insisted that Benson's should provide him a motorcycle so that he could participate in a planned group ride the next weekend. Wilkerson explained that Benson's no longer rented motorcycles and suggested that Wilkerson go to Indianapolis for a

---

[1] Ind. Code § 35-42-2-9.

rental. She handed Wilkerson a brochure explaining rental reimbursement under an extended warranty plan.

[4] Offringa took the brochure and began to move, and Wilkerson assumed that Offringa was heading out the office door. However, she became aware of "hands around [her] throat." (*Id.*, pg. 115.) Wilkerson "woke up" to find that Offringa had placed her in a headlock; he had his leg on her left thigh to immobilize her and "was taking his fingers and pounding" her head. (*Id.*, pg. 115-16.)

[5] Schmitt called police and Muncie Police Officer Ronald Locke ("Officer Locke") was dispatched to Benson's. He found Wilkerson to be "upset" and observed that her neck was red "all around." (*Id.*, pg. 41, 43.) He photographed Wilkerson's injuries and took recorded statements from Wilkerson, Schmitt, and two other employees. Wilkerson was hospitalized and treated for ruptured discs in her neck.[2]

[6] Offringa was arrested and charged with two counts of strangulation, for conduct related to Wilkerson and Schmitt. On November 6, 2017, Offringa was tried before a jury. He was acquitted of the charge related to Schmitt and convicted of the charge related to Wilkerson. Offringa received a sentence of

---

[2] She testified to having had one broken vertebrae also. It is unclear whether this was a prior injury.

three years imprisonment, with eighteen months suspended to probation. He now appeals.

# Discussion and Decision

[7] Offringa argues that the trial court improperly admitted into evidence, over his hearsay objections, (1) Officer Locke's testimony describing Wilkerson's report of the incident and (2) State's Exhibit 7, a recording made on Officer Locke's pen camera as he initially interviewed Wilkerson and her co-employees.

[8] A trial court's decision to admit or exclude evidence is within its discretion and is afforded great deference on appeal. *Carpenter v. State*, 786 N.E.2d 696, 702 (Ind. 2013). The reviewing court will not reverse the ruling unless there has been a manifest abuse of discretion resulting in the denial of a fair trial. *Id.* In this context, an abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court or it has misinterpreted the law. *Id.* We may affirm a trial court's decision regarding the admission of evidence if it is sustainable on any basis in the record. *Barker v. State*, 695 N.E.2d 925, 930 (Ind. 1998).

[9] A hearsay statement is one that "is not made by the declarant while testifying at the trial or hearing" and "is offered in evidence to prove the truth of the matter asserted." Ind. Evidence Rule 801(c). In general, hearsay is not admissible unless the Rules of Evidence specifically provide otherwise. Evid. R. 802.

Testimony. Officer Locke testified that he was dispatched to Benson's, where Wilkerson reported that Offringa had "pushed his penis in her face," grabbed her throat, strangled her, and held her in a headlock. (Tr. Vol. II, pg. 42.) Offringa objected on hearsay grounds; the trial court found the excited utterance exception to the hearsay rule to be applicable.

An excited utterance is defined as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Evid. R. 803(2). Application of the excited utterance exception is not mechanical; rather, admissibility should generally be determined on a case-by-case basis. *Brittain v. State*, 68 N.E.3d 611, 620 (Ind. Ct. App. 2017). We explained:

> the heart of the inquiry is whether the statement is inherently reliable because the declarant was incapable of thoughtful reflection. The statement must be trustworthy under the specific facts of the case at hand. The focus is on whether the statement was made while the declarant was under the influence of the excitement engendered by the startling event. The amount of time that has passed between the event and the statement is not dispositive; rather, the issue is whether the declarant was still under the stress of excitement caused by the startling event when the statement was made.

*Id.* at 620-21 (internal citations omitted).

Officer Locke arrived at Benson's approximately one to two hours after the events at issue transpired. He found Wilkerson upset and observed that she had redness on the front, back, and sides of her neck. She had sustained serious

injuries for which she had not yet been hospitalized and treated. However, she provided information in response to routine police investigatory questions. Some facts before the trial court suggested an excited utterance while others did not. But we need not decide whether the challenged testimony was an excited utterance because it was cumulative of the victim's testimony. *See Nunley v. State*, 916 N.E.2d 712, 720 (Ind. Ct. App. 2009) (evidence consistent with and not elaborating on victim testimony not grounds for reversal.)

[13] <u>Pen Camera Footage</u>. When Officer Locke was dispatched, he was outfitted with a pen-shaped camera that he activated and kept in his pocket as he took the victim and employee statements. During cross-examination of Officer Locke, defense counsel inquired as to whether Officer Locke had "reviewed that footage" from "a pen camera" and Officer Locke responded affirmatively. (Tr. Vol. II, pg. 54.) Defense counsel then began to question Officer Locke concerning the content, specifically addressing whether Wilkerson had reported being unable to breathe and whether she or others indicated that Locke had been joking.

[14] Thereafter, a hearing was conducted outside the presence of the jury at which the parties offered arguments as to the admissibility of the camera footage. Ultimately, the footage – with a short redaction – was admitted into evidence as State's Exhibit 7.

[15] Offringa now contends that the admission of State's Exhibit 7, together with Officer Locke's testimony, constituted the type of "drumbeat repetition of the

declarant's statements prior to the declarant's testifying and being subject to cross examination" specifically disapproved of by our Indiana Supreme Court in *Modesitt v. State*, 578 N.E.2d 649, 654 (Ind. 1991). In *Modesitt*, the defendant was on trial for child molestation and the prosecutor called three witnesses to recount what the victim had told them prior to calling the victim to testify; even then, the victim corroborated less than all the alleged acts already testified about and was not asked if she had made the prior statements or whether the statements were, in fact, true. *Id.* at 650. The Court observed that, "by putting into evidence the victim's out-of-court charges against Modesitt by three separate and repetitive witnesses *prior to* calling the victim herself, the prosecutor effectively precluded Modesitt from effective cross examination of these charges." *Id.* at 651 (emphasis in original). The Court was unable to "say that the drumbeat repetition of the victim's original story prior to calling the victim to testify did not unduly prejudice the jury which convicted Modesitt." *Id.* at 652.

[16] The Court held: "from this point forward, a prior statement is admissible as substantive evidence only if the declarant testifies at trial and is subject to cross examination concerning the statement, and the statement is (a) inconsistent with the declarant's testimony, and was given under oath subject to the penalty of perjury at a trial, hearing , or other proceeding, or in a deposition, or (b) consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive, or (c) one of identification of a person made after perceiving the

person." *Id.* at 653-54. Finally, the Court specified that the decision "does not affect the existing, recognized hearsay rule and its exceptions." *Id.* at 654.

[17] In response to Offringa's argument, the State directs our attention to *Norris v. State*, 53 N.E.3d 512 (Ind. Ct. App. 2016). In *Norris*, we observed that, where there was no trial objection based on drumbeat repetition, the appellant had waived his appellate argument of such, which he premised upon *Modesitt*. *Id.* at 525. Waiver notwithstanding, we found no fundamental error, concluding that the challenged testimony from two witnesses "merely provided an overview of the situation and a summary of [victim] accusations, without elaborating on [the victim's] evidence." *Id.* at 526. Likewise, Offringa did not lodge an objection that drumbeat repetition of accusations against him was prejudicing his jury or denying him a right of confrontation. And Officer Locke's testimony contained a concise summary of Wilkerson's accusations as opposed to the detailed, repetitive drumbeat, bolstering testimony considered in *Modesitt*.

[18] Additionally, the State observes that Offringa elicited testimony regarding the content of the pen camera footage before the substantially complete footage was admitted as State's Exhibit 7. The State argues that the rule of completeness, incorporated into Evidence Rule 106, supported its admissibility.

[19] Evidence Rule 106 states: "If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part – or any other writing or recorded statement – that in fairness ought to be considered at the same time." This rule is designed to avoid

misleading impressions caused by taking a statement out of context or conveying a distorted picture by introducing only selective parts. *Strunk v. State*, 44 N.E.3d 1, 6 (Ind. Ct. App. 2015). The remainder of the material is subject to the general rules of admissibility and immaterial, irrelevant, or prejudicial portions should not be admitted. *Id.*

[20] Offringa's cross-examination of Officer Locke based upon the recording suggested that Wilkerson maintained her ability to breathe during the incident and that at least some of the employees characterized the event as a joke. Evidence Rule 106 then afforded the State with an opportunity to seek admission of the remainder of the recording. The trial court excised a portion of the recording in which a reference was made to an individual, Jeff, who had not witnessed the event. The other portion was admissible to correct an impression that the event was innocuous. Indeed, although some of the employees initially perceived or suspected joking, none maintained that characterization. The redacted recording was properly admitted into evidence.

## Conclusion

[21] Offringa has not demonstrated an abuse of the trial court's discretion in the admission of evidence.

[22] Affirmed.

Crone, J., and Brown, J., concur.