# Third District Court of Appeal

### State of Florida

Opinion filed August 23, 2017.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D17-1421
Lower Tribunal No. 15-15825
_____

### Law Offices of Herssein and Herssein, P.A., etc., et al.,
Petitioners,

vs.

### United Services Automobile Association,
Respondent.

A Case of Original Jurisdiction – Prohibition.

Herssein Law Group, and Reuven Herssein, for petitioners.

Shutts & Bowen LLP, and Frank A. Zacherl and Patrick G. Brugger, for respondent.


Before FERNANDEZ, LOGUE, and SCALES, JJ.

LOGUE, J.

The Law offices of Herssein and Herssein, P.A. (Herssein Firm) and Reuven

Herssein, petition this court for a writ of prohibition to disqualify the trial court

judge below. We deny the petition. Although Petitioners raise three grounds, we write only to address the petitioners' argument that the trial court judge should be disqualified because the judge is a Facebook "friend" with a lawyer representing a potential witness and potential party in the pending litigation.

The Herssein Firm sued its former client, United Services Automobile Association (USAA), for breach of contract and fraud. In the course of the litigation, Herssein accused one of USAA's executives of witness tampering and has indicated that the executive is a potential witness and a potential defendant. In response, USAA hired Israel Reyes, an ex-circuit court judge, to represent the executive.

On June 8, 2017, the Herssein Firm filed a motion to disqualify the trial judge. The motion is based in part on the fact that Reyes is listed as a "friend" on the trial judge's personal Facebook page. In support of the motion, Iris J. Herssein and Reuven Herssein, president and vice president of the Herssein Firm, signed affidavits in which they swore, "[b]ecause [the trial judge] is Facebook friends with Reyes, [the executive's] personal attorney, I have a well-grounded fear of not receiving a fair and impartial trial. Further, based on [the trial judge] being Facebook friends with Reyes, I . . . believe that Reyes, [the executive's] lawyer has influenced [the trial judge]." The trial court denied the disqualification motion, and the Herssein Firm filed this petition for writ of prohibition.

2

The test for determining the legal sufficiency of a motion for disqualification is whether "the facts alleged (which must be taken as true) would prompt a reasonably prudent person to fear that he could not get a fair and impartial trial." Molina v. Perez, 187 So. 3d 909, 909 (Fla. 3d DCA 2016) (quoting Brofman v. Fla. Hearing Care Ctr., Inc., 703 So. 2d 1191, 1192 (Fla. 4th DCA 1997)). Our review of the facts focuses on "the reasonable effect on the party seeking disqualification, not the subjective intent of the judge." Haas v. Davis, 37 So. 3d 983, 983 (Fla. 3d DCA 2010) (quoting Vivas v. Hartford Fire Ins. Co., 789 So. 2d 1252, 1253 (Fla. 4th DCA 2001)).

The issue in this case is therefore whether a reasonably prudent person would fear that he or she could not get a fair and impartial trial because the judge is a Facebook friend with a lawyer who represents a potential witness and party to the lawsuit. At the outset, we note as a general matter, that "allegations of mere 'friendship' with an attorney or an interested party have been deemed insufficient to disqualify a judge." Smith v. Santa Rosa Island Auth., 729 So. 2d 944, 946 (Fla. 1st DCA 1998).  Indeed, the Florida Supreme Court has noted:

> There are countless factors which may cause some members of the community to think that a judge would be biased in favor of a litigant or counsel for a litigant, e.g., friendship, member of the same church or religious congregation, neighbors, former classmates or fraternity brothers. However, such allegations have been found legally insufficient when asserted in a motion for disqualification.

3

MacKenzie v. Super Kids Bargain Store, Inc., 565 So. 2d 1332, 1338 (Fla. 1990). And as Justice Overton explained in denying a request for recusal, "[i]f friendship alone with a lawyer or member of a firm is a basis for disqualification, then most judges in rural and semi-rural areas and many in metropolitan areas would be subject to disqualification in a large number of cases." Hayes v. Rogers, 378 So. 2d 1212, 1220 (Fla. 1979).

Nevertheless, this authority does not foreclose the possibility that a relationship between a judge and a lawyer may, under certain circumstances, warrant disqualification. Indeed, in Domville v. State, 103 So. 3d 184 (Fla. 4th DCA 2012), the Fourth District held that recusal was required when a judge was a Facebook "friend" with the prosecutor. The Fourth District based its holding on a 2009 Judicial Ethics Advisory Committee Opinion. Fla. JEAC Op. 2009-20 (Nov. 17, 2009). In its Opinion, the Committee advised that judges were prohibited from adding lawyers who appear before them as "friends" on their Facebook page or from allowing lawyers who appear before them to add them as "friends" on the lawyers' Facebook pages. The Committee focused on the fact that a judge on Facebook has an active role in accepting or rejecting potential "friends" or in inviting another to accept them as "friends." Id. "It is this selection and communication process," the Committee advised, "that violates Cannon 2B,

because the judge, by so doing, conveys or permits others to convey the impression that they are in a special position to influence the judge." Id.

A minority of the Committee disagreed. The minority believed that "the listing of lawyers who may appear before the judge as 'friends' on a judge's social networking page does not reasonably convey to others the impression that these lawyers are in a special position to influence the judge." Id. They reasoned "the term 'friend' on social networking sites merely conveys the message that a person so identified is a contact or acquaintance; and that such an identification does not convey that a person is a 'friend' in the traditional sense, i.e., a person attached to another person by feelings of affection or personal regard." Id.

In 2010, the Committee advised that candidates for judicial office may add lawyers as "friends" on a social networking site even if those lawyers would later appear before them should the candidate be elected. Fla. JEAC Op. 2010-05 (March 19, 2010). It also reaffirmed, however, the advice in its 2009 advisory opinion that a judge may not be Facebook "friends" with a lawyer who appears before her, although a minority believed the committee should recede from its 2009 opinion. See Fla. JEAC Op. 2010-06 (March 26, 2010).

More recently, the Fifth District signaled disagreement with the Fourth District's Domville decision. In Chace v. Loisel, 170 So. 3d 802, 803-04 (Fla. 5th DCA 2014), the Fifth District held that, in a dissolution of marriage case, a judge

who sent the wife a Facebook friend request during the proceedings, which the wife rejected, made an ex-parte communication and was required to recuse himself. In so ruling, however, the Fifth District noted, "[w]e have serious reservations about the court's rationale in Domville." Id. Defining the word "friend" on Facebook as a "term of art," the Fifth District explained:

> A number of words or phrases could more aptly describe the concept, including acquaintance and, sometimes, virtual stranger. A Facebook friendship does not necessarily signify the existence of a close relationship. Other than the public nature of the internet, there is no difference between a Facebook "friend" and any other friendship a judge might have. Domville's logic would require disqualification in cases involving an acquaintance of a judge. Particularly in smaller counties, where everyone in the legal community knows each other, this requirement is unworkable and unnecessary. Requiring disqualification in such cases does not reflect the true nature of a Facebook friendship and casts a large net in an effort to catch a minnow.

Id.

We agree with the Fifth District that "[a] Facebook friendship does not necessarily signify the existence of a close relationship." We do so for three reasons. First, as the Kentucky Supreme Court noted, "some people have thousands of Facebook 'friends.' " Sluss v. Commonwealth, 381 S.W.3d 215, 222 (Ky. 2012). In Sluss, the Kentucky Supreme Court held the fact that a juror who was a Facebook "friend" with a family member of a victim, standing alone, was not enough evidence to presume juror bias sufficient to require a new trial. In Sluss, the juror in question had nearly two thousand Facebook "friends." Id. at 223.

6

Another recent out-of-state case involved a trial judge with over fifteen hundred Facebook "friends" who was allegedly a Facebook friend with a potential witness, a local university basketball coach, who himself had more than forty-nine hundred Facebook "friends." State v. Madden, No. M2012-02473-CCA-R3-CD, 2014 WL 931031, at *1-2 (Tenn. Crim. App. Mar. 11, 2014) (holding trial judge did not abuse his discretion under Tennessee law in refusing to recuse himself because he was allegedly Facebook "friends" with potential witness).[1]

Second, Facebook members often cannot recall every person they have accepted as "friends" or who have accepted them as "friends." In a recent case, a student, who had over one thousand Facebook "friends," did not know he was a Facebook "friend" with another student he was accused of assaulting. Furey v. Temple Univ., 884 F. Supp. 2d 223, 241 (E.D. Pa. 2012). In another case, a juror did not recognize a victim's name even though a member of the victim's family was one of her over-a-thousand Facebook "friends." Slaybaugh v. State, 47 N.E.3d 607, 608 (Ind. 2016) (affirming trial court's denial of mistrial when "juror testified she was a realtor, had more than 1000 'friends' on Facebook—most of whom she had 'friended' for networking purposes—but she had not recognized the victim's

---

[1] See, e.g., Mocombe v. Russell Life Skills & Reading Found., Inc., No. 12-60659-CIV, 2014 WL 11531914, at *1 (S.D. Fla. Oct. 31, 2014) (noting "Plaintiff had more than 5,000 Facebook friends."); Banken v. Banken, No. A11-2156, 2013 WL 490677, at *9 (Minn. Ct. App. Feb. 11, 2013) (noting a party had "more than 1000 friends" on Facebook).

name during voir dire, did not recognize the victim when she testified, and did not know the victim or her family").[2]

Third, many Facebook "friends" are selected based upon Facebook's data-mining technology rather than personal interactions. Facebook data-mines its members' current list of "friends," uploaded contact lists from smart phones and computers, emails, names tagged in uploaded photographs, internet groups, networks such as schools and employers, and other publicly or privately available information. This information is analyzed by proprietary algorithms that predict associations. Facebook then suggests these "People You May Know" as potential "friends."[3]

The use of data mining and networking algorithms, which are also revolutionizing modern marketing and national security systems, reflects an

---

[2] Because Facebook members sometimes cannot be expected to know everyone they have accepted as "friends" or who have accepted them as "friends," the American Bar Association, when advising judges that they should disclose Facebook friendships when appropriate, expressly advised that a judge need not review his or her list of "friends" when doing so. American Bar Association, Judge's Use of Electronic Social Networking Media, Formal Opinion 462 (Feb. 21, 2013) ("[N]othing requires a judge to search all of the judge's ESM [electronic social media] connections if a judge does not have specific knowledge of an ESM connection that rises to the level of an actual or perceived problematic relationship with any individual.").

[3] Facebook, Where do People You May Know suggestions come from? https://www.facebook.com/help/163810437015615?helpref=search&sr=1&query=how%20does%20facebook%20come%20up%20with%20friend%20suggestions (visited August 2, 2017).

astounding development in applied mathematics; it constitutes a powerful tool to build personal and professional networks; and it has nothing to do with close or intimate friendships of the sort that would require recusal. This common method of selecting Facebook "friends" undermines the rationale of <u>Domville</u> and the 2009 Ethics Opinion that a judge's selection of Facebook "friends" necessarily "conveys or permits others to convey the impression that they are in a special position to influence the judge."

To be sure, some of a member's Facebook "friends" are undoubtedly friends in the classic sense of person for whom the member feels particular affection and loyalty. The point is, however, many are not. A random name drawn from a list of Facebook "friends" probably belongs to casual friend; an acquaintance; an old classmate; a person with whom the member shares a common hobby; a "friend of a friend;" or even a local celebrity like a coach. An assumption that all Facebook "friends" rise to the level of a close relationship that warrants disqualification simply does not reflect the current nature of this type of electronic social networking.

In fairness to the Fourth District's decision in <u>Domville</u> and the Judicial Ethics Advisory Committee's 2009 opinion, electronic social media is evolving at an exponential rate. Acceptance as a Facebook "friend" may well once have given the impression of close friendship and affiliation. Currently, however, the degree

of intimacy among Facebook "friends" varies greatly. The designation of a person as a "friend" on Facebook does not differentiate between a close friend and a distant acquaintance. Because a "friend" on a social networking website is not necessarily a friend in the traditional sense of the word, we hold that the mere fact that a judge is a Facebook "friend" with a lawyer for a potential party or witness, without more, does not provide a basis for a well-grounded fear that the judge cannot be impartial or that the judge is under the influence of the Facebook "friend." On this point we respectfully acknowledge we are in conflict with the opinion of our sister court in Domville.

Petition denied.