CANADY, C.J.
In this case, we consider an issue regarding the legal sufficiency of a motion to disqualify a trial court judge on the basis of a Facebook "friendship." This Court granted jurisdiction to review the decision of the Third District Court of Appeal in Law Offices of Herssein & Herssein, P.A. v. United Services Automobile Ass'n , 229 So.3d 408 (Fla. 3d DCA 2017), which held that the existence of a Facebook "friendship" was not a sufficient basis for disqualification and which expressly and directly conflicts with the decision of the Fourth District Court of Appeal in Domville v. State , 103 So.3d 184 (Fla. 4th DCA 2012). We have jurisdiction. See art. V, § 3(b)(3), Fla. Const.
We hold that an allegation that a trial judge is a Facebook "friend" with an attorney appearing before the judge, standing alone, does not constitute a legally sufficient basis for disqualification. We therefore approve the decision of the Third District in Herssein and disapprove the decision of the Fourth District in Domville on the conflict issue.[1]
BACKGROUND
In the case on review, the Law Offices of Herssein and Herssein, P.A., and attorney Reuven Herssein "filed a motion to disqualify the trial judge." Herssein , 229 So.3d at 409. After the trial judge denied the disqualification motion as legally insufficient, the Herssein Firm and attorney Herssein "petition[ed the Third District] for a writ of prohibition to disqualify the trial court judge." Id. On review of the petition, the Third District explained the basis for the motion to disqualify that is relevant here:
The motion [to disqualify] is based in part on the fact that [Israel] Reyes[-an attorney appearing before the trial judge on behalf of a potential witness and potential party in the pending litigation-]is listed as a "friend" on the trial judge's personal Facebook page. In support of the motion, Iris J. Herssein and Reuven Herssein, president and vice president of the Herssein Firm, signed affidavits in which they swore, "[b]ecause [the trial judge] is Facebook friends with Reyes, [the executive's] personal attorney, I have a well-grounded fear of not receiving a fair and impartial *892 trial. Further, based on [the trial judge] being Facebook friends with Reyes, I ... believe that Reyes, [the executive's] lawyer has influenced [the trial judge]."
Id. (some alterations in original).
The Third District expressly acknowledged that "Petitioners raise[d] three grounds" for disqualification on review. Id. But the Third District "wr[ote] only to address the petitioners' argument that the trial court judge should be disqualified because the judge is a Facebook 'friend' with a lawyer representing a potential witness and potential party in the pending litigation." Id. The Third District framed the issue as "whether a reasonably prudent person would fear that he or she could not get a fair and impartial trial because the judge is a Facebook friend with a lawyer who represents a potential witness and party to the lawsuit." Id.
At the outset, the Third District cited authority from this Court and the First District Court of Appeal supporting the longstanding general principle of law that an allegation of mere friendship between a judge and a litigant or attorney appearing before the judge, standing alone, does not constitute a legally sufficient basis for disqualification. Id. at 409-10 (citing MacKenzie v. Super Kids Bargain Store, Inc. , 565 So.2d 1332, 1338 (Fla. 1990) ; Smith v. Santa Rosa Island Auth. , 729 So.2d 944, 946 (Fla. 1st DCA 1998) ).
The Third District acknowledged that "this authority does not foreclose the possibility that a relationship between a judge and a lawyer may, under certain circumstances, warrant disqualification." Id. at 410. The Third District noted that the Fourth District in Domville "held that recusal was required when a judge was a Facebook 'friend' with the prosecutor" based on "a 2009 Judicial Ethics Advisory Committee Opinion." Id. (citing Fla. JEAC Op. 2009-20 (Nov. 17, 2009) ). The Florida Judicial Ethics Advisory Committee ("JEAC") advised in its 2009 opinion that judges were prohibited from adding lawyers who appear before them as "friends" on their Facebook pages or from allowing lawyers who appear before them to add them as "friends" on the lawyers' Facebook pages based on the JEAC's conclusion that "a judge's selection of Facebook 'friends' necessarily 'conveys or permits others to convey the impression that they are in a special position to influence the judge' " in violation of Canon 2B of the Florida Code of Judicial Conduct. Id. at 412 (quoting Fla. JEAC Op. 2009-20 (Nov. 17, 2009) ). In support of its conclusion, the JEAC zeroed in on the "selection and communication process" of Facebook "friendship." Id. at 410 (quoting Fla. JEAC Op. 2009-20 (Nov. 17, 2009) ). The JEAC reaffirmed its advice in 2010. Id. (citing Fla. JEAC Op. 2010-06 (Mar. 26, 2010) ).
The Third District went on to explain that the Fifth District in Chace v. Loisel , 170 So.3d 802 (Fla. 5th DCA 2014), subsequently "signaled disagreement" with Domville . Herssein , 229 So.3d at 410. Chace expressed "serious reservations about the court's rationale in Domville " in part because "[a] Facebook friendship does not necessarily signify the existence of a close relationship." Id. (quoting Chace , 170 So.3d at 803-04 ).
The Third District agreed with Chace on this point for three reasons. Id. at 411. "First, as the Kentucky Supreme Court noted, 'some people have thousands of Facebook "friends." ' " Id. (quoting Sluss v. Commonwealth , 381 S.W.3d 215, 222 (Ky. 2012) ). "Second, Facebook members often cannot recall every person they have accepted as 'friends' or who have accepted them as 'friends.' " Id. And "[t]hird, many Facebook 'friends' are selected based upon Facebook's data-mining technology [suggestions] rather than personal interactions."
*893 Id. Thus the Third District concluded that "a 'friend' on a social networking website is not necessarily a friend in the traditional sense of the word[-i.e., a person attached to another person by feelings of affection or personal regard]." Id. at 412. The Third District further concluded that "[a]n assumption that all Facebook 'friends' rise to the level of a close relationship that warrants disqualification simply does not reflect the current nature of this type of electronic social networking." Id.
The Third District ultimately "h[eld] that the mere fact that a judge is a Facebook 'friend' with a lawyer for a potential party or witness, without more, does not provide a basis for a well-grounded fear that the judge cannot be impartial or that the judge is under the influence of the Facebook 'friend.' " Id. Accordingly, the Third District denied the petition for writ of prohibition. Id. The Third District acknowledged that its holding was "in conflict" with Domville but did not certify conflict. Id.
ANALYSIS
The conflict issue presents a pure question of law that is subject to de novo review. See Daniels v. State , 121 So.3d 409, 413 (Fla. 2013). In considering this question of law, we first discuss the general standard governing disqualification and review the case law addressing the specific issue of judicial disqualifications based on a friendship relationship. We then apply the established principles of law to the context of Facebook "friendships." Finally, we explain that our conclusion that Facebook "friendship," standing alone, is insufficient to warrant disqualification is consistent with the majority view in the other states.
A. Legal Standard for Disqualification
"A motion to disqualify is governed substantively by section 38.10, Florida Statutes ... and procedurally by Florida Rule of Judicial Administration 2.330." Gregory v. State , 118 So.3d 770, 778 (Fla. 2013) (quoting Gore v. State , 964 So.2d 1257, 1268 (Fla. 2007) ). "The statute requires that the moving party file an affidavit in good faith 'stating fear that he or she will not receive a fair trial ... on account of the prejudice of the judge' as well as 'the facts and the reasons for the belief that any such bias or prejudice exists.' " Peterson v. State , 221 So.3d 571, 581 (Fla. 2017) (quoting § 38.10, Fla. Stat. (2014) ). The rule provides that "[t]he judge against whom an initial motion to disqualify ... is directed shall determine only the legal sufficiency of the motion and shall not pass on the truth of the facts alleged." Pasha v. State , 225 So.3d 688, 703 (Fla. 2017) (quoting Fla. R. Jud. Admin. 2.330(f) ). "The disqualification [statute and] rules are designed to keep the courts free from bias and prejudice." Tableau Fine Art Group, Inc. v. Jacoboni , 853 So.2d 299, 301 (Fla. 2003). "[T]he disqualification statute and rules are [also] designed to ensure confidence in the judicial system, 'as well as to prevent the disqualification process from being abused for the purposes of judge-shopping, delay, or some other reason not related to providing for the fairness and impartiality of the proceeding.' " Id. (quoting Livingston v. State , 441 So.2d 1083, 1086 (Fla. 1983) ).
"The standard of review of a trial judge's determination on a motion to disqualify is de novo." Parker v. State , 3 So.3d 974, 982 (Fla. 2009). "A motion to disqualify will be dismissed as legally insufficient if it fails to establish a well-grounded fear on the part of the movant that he will not receive a fair hearing." Braddy v. State , 111 So.3d 810, 833 (Fla. 2012) (quoting Correll v. State , 698 So.2d 522, 524 (Fla. 1997) ). "Whether the motion *894 is legally sufficient is a question of law." Mansfield v. State , 911 So.2d 1160, 1170 (Fla. 2005). The standard for determining the legal sufficiency of a motion to disqualify is whether the facts alleged, which must be assumed to be true, "would place a reasonably prudent person in fear of not receiving a fair and impartial trial." MacKenzie , 565 So.2d at 1335 (quoting Livingston , 441 So.2d at 1087 ). "A mere 'subjective fear[ ]' of bias [or prejudice] will not be legally sufficient; rather, the fear must be objectively reasonable." Arbelaez v. State , 898 So.2d 25, 41 (Fla. 2005) (first alteration in original) (quoting Fischer v. Knuck , 497 So.2d 240, 242 (Fla. 1986) ).
B. Traditional "Friendship"
In the traditional sense, a "friend" is a person attached to another person by feelings of affection or esteem. See, e.g. , Webster's Third New International Dictionary 911 (1993 ed.) (defining the term "friend" as "one that seeks the society or welfare of another whom he holds in affection, respect, or esteem"); The American Heritage Dictionary 703 (5th ed. 2011) (defining the term "friend" as "[a] person whom one knows, likes, and trusts"); Shorter Oxford English Dictionary 1035 (6th ed. 2007) (defining the term "friend" as "[a] person joined by affection and intimacy to another").
But "friendship" in the traditional sense of the word does not necessarily signify a close relationship. It is commonly understood that friendship exists on a broad spectrum: some friendships are close and others are not. See, e.g. , Black's Law Dictionary 667 (6th ed. 1990) (defining the term "friend" as "[v]arying in degree from greatest intimacy to acquaintance more or less casual"); Black's Law Dictionary 600 (5th ed. 1979) (same); Black's Law Dictionary 795 (4th ed. 1951) (same); see also Clark v. Campbell , 82 N.H. 281, 133 A. 166, 170 (1926) ("Friendship is a word of broad and varied application."). Thus the mere existence of a friendship, in and of itself, does not inherently reveal the degree or intensity of the friendship.
It follows that the mere existence of a friendship between a judge and an attorney appearing before the judge, without more, does not reasonably convey to others the impression of an inherently close or intimate relationship. No reasonably prudent person would fear that she could not receive a fair and impartial trial based solely on the fact that a judge and an attorney appearing before the judge are friends of an indeterminate nature. It is for this reason that Florida courts-including this Court-have long recognized the general principle of law that an allegation of mere friendship between a judge and a litigant or attorney appearing before the judge, standing alone, does not constitute a legally sufficient basis for disqualification. See, e.g. , MacKenzie , 565 So.2d at 1338 ("There are countless factors which may cause some members of the community to think that a judge would be biased in favor of a litigant or counsel for a litigant, e.g., friendship, member of the same church or religious congregation, neighbors, former classmates or fraternity brothers. However, such allegations have been found legally insufficient when asserted in a motion for disqualification."); Ervin v. Collins , 85 So.2d 833, 833-34 (Fla. 1956) (allegations of friendship between three supreme court justices and the governor, who was a party, were "not sufficient to constitute a legal basis for disqualification"); Ball v. Yates , 158 Fla. 521, 29 So.2d 729, 735 (1946) (allegation of friendship between a supreme court justice and an attorney previously employed by the prevailing party was "in fact and in law ... inadequate and insufficient in substance" for disqualification); see also Smith , 729 So.2d at 946 ;
*895 Adkins v. Winkler , 592 So.2d 357, 360-61 (Fla. 1st DCA 1992) ; Raybon v. Burnette , 135 So.2d 228, 230-31 (Fla. 2d DCA 1961).[2]
With this legal framework in mind, we now turn to address the Facebook "friendship" issue.
C. Facebook "Friendship"
Facebook was officially "launched on February 4, 2004." Facebook, Inc. v. DLA Piper LLP (US) , 134 A.D.3d 610, 23 N.Y.S.3d 173, 175 (2015). Facebook is a social media and social networking service with approximately "1.79 billion active users." Packingham v. North Carolina , --- U.S. ----, 137 S.Ct. 1730, 1735, 198 L.Ed.2d 273 (2017). Facebook "permits registered users to do a host of things, among them: posting and reading comments, events, news, and, in general, communicating with ... others." United States v. Jordan , 678 F. App'x 759, 761 n.1 (10th Cir. 2017) ; see, e.g. , Elonis v. United States , --- U.S. ----, 135 S.Ct. 2001, 2004-07, 192 L.Ed.2d 1 (2015).
Facebook provides users with several means of communicating with one another. Users can send private messages to one or more users. Users can also communicate by posting information to their Facebook "wall," which is part of each user's Profile Page. A Facebook "wall post" can include written comments, photographs, digital images, videos, and content from other websites.
Shaw v. Young , 199 So.3d 1180, 1188 n.6 (La. Ct. App. 2016) (quoting Ehling v. Monmouth-Ocean Hosp. Serv. Corp. , 961 F.Supp.2d 659, 662 (D.N.J. 2013) ).
"Facebook users [primarily] create online profiles to share information about themselves with other Facebook users." Sublet v. State , 442 Md. 632, 113 A.3d 695, 698 n.5 (2015). "To create a profile, a person must go to www.facebook.com, enter his or her full name, birth date, and e-mail address, and register a password. Facebook then sends a confirmation link to the registered e-mail, which the person must click on to complete registration." Smith v. State , 136 So.3d 424, 432 (Miss. 2014). "Thereafter, the profile may be accessed on any computer or mobile device by logging into Facebook's website using the same e-mail address and password combination." State v. Buhl , 321 Conn. 688, 138 A.3d 868, 874 n.2 (2016). "Once registered, a Facebook user can ... customize her profile by adding personal information, photographs, or other content. A user can [also] establish connections with other Facebook users by 'friending' them; the connected users are thus called 'friends.' " Facebook, Inc. v. Power Ventures, Inc. , 844 F.3d 1058, 1063 (9th Cir. 2016) ; see Ehling , 961 F.Supp.2d at 662 ("A Facebook user can connect with other users by adding them as 'Facebook friends.' ").
A Facebook user's "friend" list appears on his profile page. See Strunk v. State , 44 N.E.3d 1, 5 (Ind. Ct. App. 2015) ; Commonwealth v. K.S.F. , No. 2497 EDA 2011, 2013 WL 11266159, at *1 n.3 (Pa. Super. Ct. Apr. 12, 2013). In order to "select" a Facebook "friend," a user must either (1) send a Facebook "friend" request to another user to accept or (2) accept a Facebook "friend" request sent by another user; a Facebook "friendship" is officially established by the acceptance of a previously sent "friend" request. See Fla. JEAC Op. 2009-20 (Nov. 17, 2009).
*896 In general, "Facebook users may opt to make all or part of their Facebook information private ...." Sluss , 381 S.W.3d at 227 n.12. But even if a Facebook user generally opts to make the user's profile private, others may still be able to view the user's list of Facebook "friends" on the user's profile page. See Chaney v. Fayette County Pub. Sch. Dist. , 977 F.Supp.2d 1308, 1315 (N.D. Ga. 2013) ; State v. Eleck , 130 Conn.App. 632, 23 A.3d 818, 820 n.1 (2011). Moreover, even if the Facebook user specifically opts to make the user's Facebook "friend" list private, the user may still appear as a Facebook "friend" on another's profile page. See United States v. Meregildo , 883 F.Supp.2d 523, 525-26 (S.D.N.Y. 2012) ; State v. Gaps , 316 P.3d 172, 2014 WL 113465, at *2 (Kan. Ct. App. 2014). In this way, it could be said that a Facebook user publicly "communicates" the existence of the user's Facebook "friendships" to others. See Fla. JEAC Op. 2009-20 (Nov. 17, 2009).
We now come to the crux of the matter: what is the nature of Facebook "friendship?" "The word 'friend' on Facebook is a term of art." Chace , 170 So.3d at 803. In its most basic sense, a Facebook "friend" is a person digitally connected to another person by virtue of their Facebook "friendship." See, e.g. , Power Ventures , 844 F.3d at 1063 ; Ehling , 961 F.Supp.2d at 662.
A Facebook "friend" may or may not be a "friend" in the traditional sense of the word. But Facebook "friendship" is not-as a categorical matter-the functional equivalent of traditional "friendship." The establishment of a Facebook "friendship" does not objectively signal the existence of the affection and esteem involved in a traditional "friendship." Today it is commonly understood that Facebook "friendship" exists on an even broader spectrum than traditional "friendship." Traditional "friendship" varies in degree from greatest intimacy to casual acquaintance; Facebook "friendship" varies in degree from greatest intimacy to "virtual stranger" or "complete stranger." Chace , 170 So.3d at 803 ; see, e.g. , United States v. Tsarnaev , 157 F.Supp.3d 57, 67 n.16 (D. Mass. 2016) ("Over a billion people use Facebook and connect with other users as 'friends.' Some may be friends in the traditional sense, but others are no more than acquaintances or contacts or in some cases may even be complete strangers."); In re Air Crash Near Clarence Ctr., N.Y. , No. 09-CV-769S, 2013 WL 6073635, at *5 (W.D.N.Y. Nov. 18, 2013) (noting that "one can be [Facebook] 'friends' with people known to them, with strangers, with celebrities, with animals, and even with inanimate objects").
So it is regularly the case that Facebook "friendships" are more casual and less permanent than traditional friendships. See, e.g. , Williams v. Scribd, Inc. , No. 09CV1836-LAB WMC, 2010 WL 10090006, at *6 (S.D. Cal. June 23, 2010) ("[It is] no secret that the 'friend' label means less in cyberspace than it does in the neighborhood, or in the workplace, or on the schoolyard, or anywhere else that humans interact as real people."); Quigley Corp. v. Karkus , No. 09-1725, 2009 WL 1383280, at *5 n.3 (E.D. Pa. May 15, 2009) ("Indeed, 'friendships' on Facebook may be as fleeting as the flick of a delete button."); Herssein , 229 So.3d at 411 (" '[S]ome people have thousands of Facebook "friends." ' ... Facebook members often cannot recall every person they have accepted as 'friends' or who have accepted them as 'friends.' ... [M]any Facebook 'friends' are selected based upon Facebook's data-mining technology [suggestions] rather than personal interactions." (quoting Sluss , 381 S.W.3d at 222 ) ); State v. Smith , No. M2014-00059-CCA-R3-CD, 2015 WL 100452, at *8 (Tenn. Crim. App. Jan. 7, 2015) ("Facebook 'friendships' frequently *897 exist between those who are indifferent to one another.").
It is therefore undeniable that the mere existence of a Facebook "friendship," in and of itself, does not inherently reveal the degree or intensity of the relationship between the Facebook "friends." Since the creation of a Facebook "friendship" in itself does not signal the existence of a traditional "friendship," it certainly cannot signal the existence of a close or intimate relationship. See McGaha v. Commonwealth , 414 S.W.3d 1, 6 (Ky. 2013) ("It is now common knowledge that merely being friends on Facebook does not, per se , establish a close relationship ...."); Sluss , 381 S.W.3d at 222 (" '[F]riendships' on Facebook and other similar social networking websites do not necessarily carry the same weight as true friendships or relationships in the community ...."); Kirby v. Wash. State Dep't of Emp't Sec. , No. 70738-8-I, 2014 WL 7339610, at *1 (Wash. Ct. App. Dec. 22, 2014) ("The words 'post,' 'friend,' and 'friending' used in [the Facebook] context merely refer to individuals communicating with those listed on a social networking website and do[ ] not, necessarily, imply any more significant relationship between those individuals.").
In short, the mere fact that a Facebook "friendship" exists provides no significant information about the nature of any relationship between the Facebook "friends." Therefore, the mere existence of a Facebook "friendship" between a judge and an attorney appearing before the judge, without more, does not reasonably convey to others the impression of an inherently close or intimate relationship. No reasonably prudent person would fear that she could not receive a fair and impartial trial based solely on the fact that a judge and an attorney appearing before the judge are Facebook "friends" with a relationship of an indeterminate nature.
As we now explain, our holding is in line with the majority of state judicial discipline bodies and judicial ethics advisory committees-which we refer to collectively as state ethics committees-that have considered whether Facebook "friendship" between a judge and an attorney appearing before the judge creates the appearance of impropriety under their respective states' judicial codes of conduct.
D. State Ethics Committees
The clear majority position is that mere Facebook "friendship" between a judge and an attorney appearing before the judge, without more, does not create the appearance of impropriety under the applicable code of judicial conduct. See, e.g. , Ariz. JEAC Op. 14-01, at 4 (Aug. 5, 2014); Ky. Jud. Ethics Comm. Op. JE-119, at 2-3 (Jan. 20, 2010); Md. Jud. Ethics Comm. Op. 2012-07, at 5 (June 12, 2012); Mo. Ret., Removal, & Discipline Comm'n Op. 186, at 1 (Apr. 24, 2015); N.M. Jud. Conduct Adv. Comm. Op. Concerning Soc. Media, at 13-14 (Feb. 15, 2016); N.Y. JEAC Op. 13-39 (May 28, 2013); Ohio Bd. of Comm'rs on Grievances & Discipline Op. 2010-7, at 1-2, 8-9 (Dec. 3, 2010); Utah JEAC Op. 12-01, at 4-7 (Aug. 31, 2012). In other words, the majority position is that the mere existence of a Facebook "friendship" between a judge and an attorney appearing before the judge, without more, does not reasonably convey or permit others to convey the impression that they are in a special position to influence the judge in violation of the applicable code of judicial conduct.
The minority position is that Facebook "friendship" between a judge and an attorney appearing before the judge, standing alone, creates the appearance of impropriety because it reasonably conveys or permits others to convey the impression that they are in a special position to influence the judge in violation of the applicable code of judicial conduct. See, e.g. , Cal.
*898 Judges Ass'n Jud. Ethics Comm. Op. 66, at 1, 10-11 (Nov. 23, 2010); Conn. Jud. Ethics Comm. Op. 2013-06 (Mar. 22, 2013); Fla. JEAC Op. 2009-20 (Nov. 17, 2009); Mass. Jud. Ethics Comm. Op. 2011-6 (Dec. 28, 2011); Okla. Jud. Ethics Adv. Pan. 2011-3 (July 6, 2011).
Florida's JEAC was one of the first to advise that judges were prohibited from adding attorneys who appear before them as "friends" on their Facebook page or from allowing attorneys who appear before them to add them as "friends" on the attorneys' Facebook pages based on the JEAC's conclusion that a judge's selection of Facebook "friends" necessarily "conveys or permits others to convey the impression that they are in a special position to influence the judge" in violation of Canon 2B of the Florida Code of Judicial Conduct. Fla. JEAC Op. 2009-20 (Nov. 17, 2009).[3] The JEAC has since reaffirmed its support of the minority position and extended the reasoning of the minority position to other social media and social networking services including LinkedIn and Twitter. See Fla. JEAC Op. 2013-14 (July 30, 2013) (extending the reasoning of the minority position to Twitter); Fla. JEAC Op. 2012-12 (May 9, 2012) (extending the reasoning of the minority position to LinkedIn); Fla. JEAC Op. 2010-06 (Mar. 26, 2010) (reaffirming its support of the minority position).
The overarching concern of the JEAC is that a reasonably prudent person would fear that he or she could not receive a fair and impartial trial based solely on the fact that a judge and an attorney appearing before the judge are Facebook "friends" of an indeterminate nature. For the reasons we have explained, we conclude that concern is unwarranted. The correct approach is that taken by the majority position, which recognizes the reality that Facebook "friendship," standing alone, does not reasonably convey to others the impression of an inherently close or intimate relationship that might warrant disqualification.
In its 2009 Opinion, the JEAC relied on the "selection and communication process" of Facebook "friendship" in support of its conclusion that Facebook "friendship" between a judge and an attorney appearing before the judge reasonably "convey[s] or permit[s] others to convey the impression that they are in a special position to influence the judge." Fla. JEAC Op. 2009-20 (Nov. 17, 2009) (quoting Fla. Code Jud. Conduct, Canon 2B). But by focusing on the public nature of Facebook "friendship," the JEAC missed the intrinsic nature of Facebook "friendship." It is commonly understood that traditional "friendship" involves a "selection and communication process," albeit one less formalized than the Facebook process. People traditionally "select" their friends by choosing to associate with them to the exclusion of others. And people traditionally "communicate" the existence of their friendships by choosing to spend time with their friends in public, introducing their friends to others, or interacting with them in other ways that have a public dimension. Nevertheless, this Court has consistently recognized that an allegation of mere friendship between a judge and a litigant or attorney appearing before the judge, standing alone, does not constitute a legally sufficient basis for disqualification. See, e.g. , MacKenzie , 565 So.2d at 1338 ; Ervin , 85 So.2d at 833-34 ; Ball , 29 So.2d at 735. If traditional "friendship," without more, does not reasonably convey or permit others to convey the impression that they are in a special position *899 to influence the judge, then surely Facebook "friendship"-which exists on an even broader spectrum than traditional "friendship" and is regularly more casual and less permanent than traditional "friendship"-does not reasonably convey such an impression. The JEAC's position simply cannot be reconciled with this Court's longstanding treatment of disqualification motions based on mere allegations of traditional "friendship."
CONCLUSION
In some circumstances, the relationship between a judge and a litigant, lawyer, or other person involved in a case will be a basis for disqualification of the judge. Particular friendship relationships may present such circumstances requiring disqualification. But our case law clearly establishes that not every relationship characterized as a friendship provides a basis for disqualification. And there is no reason that Facebook "friendships"-which regularly involve strangers-should be singled out and subjected to a per se rule of disqualification.
We approve Herssein and disapprove Domville .
It is so ordered.
POLSTON, LABARGA, and LAWSON, JJ., concur.
LABARGA, J., concurs with an opinion.
PARIENTE, J., dissents with an opinion, in which LEWIS and QUINCE, JJ., concur.

The Petitioners have presented certain other issues that we decline to address.

Of course, this general rule of law does not suggest that a friendship between a judge and an attorney of a determinate nature cannot constitute a close or intimate relationship that warrants disqualification. Nor does it foreclose the possibility that a friendship between a judge and an attorney of an indeterminate nature may, in conjunction with some additional factor, constitute legally sufficient grounds for disqualification.

Canon 2B of the Florida Code of Judicial Conduct provides that a judge shall not "convey or permit others to convey the impression that they are in a special position to influence the judge."